COMMONWEALTH of Pennsylvania, Appellant

v.

Bonnie DEAN, Appellee.

Superior Court of Pennsylvania.

Submitted July 30, 2007.

Filed Jan. 4, 2008.

Michael D. Muffley, Assistant District Attorney, Jim Thorpe, for Commonwealth, appellant.

Jonathan J. Sobel, Philadelphia, for appellant.

BEFORE: LALLY–GREEN, BOWES, and POPOVICH, JJ.

OPINION BY POPOVICH, J.:

¶ 1 The Commonwealth appeals the order granting a motion to suppress filed by Appellee Bonnie Dean on grounds that: (1) the narcotic agents had probable cause to make a warrantless entry into Appellee's hotel room; and (2) the entry was consensual, which vitiated the need to obtain a search warrant and validated seizure of the evidence therefrom.[1]  We affirm.

¶ 2 When reviewing the propriety of a suppression order, an appellate court is required to determine whether the record supports the suppression court's factual findings and whether the inferences and legal conclusions drawn by the suppression court from those findings are appropriate. *Commonwealth v. Davis*, 491 Pa. 363, 421 A.2d 179 (1980).  Because Appellee prevailed in the suppression court, we may consider only the evidence of the defense and so much of the evidence for the Commonwealth as remains uncontradicted when read in the context of the record as a whole.  Where the record supports the factual findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. *Commonwealth v. Bomar*, 573 Pa. 426, 826 A.2d 831, 842 (2003).  However, where the appeal of the determination of the suppression court turns on allegations of legal error, "[t]he suppression court's conclusions of law [ ... ] are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts." *Commonwealth v. Nester*, 551 Pa. 157, 709 A.2d 879, 881 (1998).  As a result, the conclusions of law of the suppression court are subject to plenary review. *Commonwealth v. Mistler*, 590 Pa. 390, 912 A.2d 1265 (2006).

1. The Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution. Pa.R.A.P. 311(d); *Commonwealth v. Torres*, 564 Pa. 86, 764 A.2d 532, 536 n. 2 (2001).  Herein, the Commonwealth's initial notice of appeal did not contain "the order will terminate or substantially handicap the prosecution" language, but a subsequently filed amended notice of appeal did contain the required phrase.  On this basis, we find that this appeal has been properly and timely filed. *Commonwealth v. Medrano*, 788 A.2d 422, 425 n. 4 (Pa.Super.2001).

¶ 3 With the preceding in mind, we shall recite the facts as found by the suppression court:

1. On August 24, 2005, at or about 4:30 P.M., [Appellee] was a registered guest in Room 211 at the Country Inn and Suites ("Country Inn")[;] a motel located at 1619 Interchange Road, in Franklin Township, Carbon County. [S]he was the only person staying in that room.

2. On that date Roseanne Billings was the assistant General Manager of the Country Inn and the manager on duty at the Inn.

3. Agents Kirk Schwartz and Jeff Antinucci are narcotics officers, employed by the Pennsylvania Office of Attorney General, Bureau of Narcotics Investigation.

4. The Agents went to the Country Inn on August 24, 2005 to arrest Bradley Conklin, a nephew of [Appellee]. Conklin was staying at the Inn in Room 309, which was registered to Tonya Conklin.

5. The arrest was based on a drug transaction where Agent Schwartz had purchased seventeen grams of cocaine from Mr. Conklin approximately two (2) months prior to the date of this incident.

6. After asking and obtaining from Ms. Billings the location of Bradley Conklin, Agents Schwartz and Antinucci went to Room 309, and arrested Bradley Conklin as well as Chad Conklin.

7. After Bradley Conklin was taken into custody, he told Agent Schwartz that [Appellee] had marijuana and methamphetamine in Room 211. Agent Schwartz suspected [Appellee] of trafficking in drugs.

8. The Agents then went to Room 211, and as they approached the door they smelled the odor of marijuana emanating from under the door.

9. Agent Schwartz returned to Roseanne Billings and asked her "what they had known about [Appellee]." Ms. Billings confirmed that [Appellee] was a guest staying in Room 211, and that she had been there for some time.

10. At approximately 4:30 P.M., Agent Schwartz asked Ms. Billings to accompany him to Room 211 "in case [Appellee] would not open the door."

11. When Ms. Billings arrived at Room 211 with Agents Schwartz and Antinucci she smelled marijuana, which she said "was always outside that room." Ms. Billings knocked on the door two times and identified herself. After her second knock, Ms. Billings heard a response from within the room but did not know what was said.

12. Agent Schwartz also knocked and identified himself; there was no response to his knock from within the room.

13. Ms. Billings thereupon used her key to open the locked door and stood in the doorway.

14. As the door opened, [Appellee], clad in a bathing suit, was observed reclining in the hot tub; another female and two children were making their way to exit the room.

15. Agents Schwartz and Antinucci entered the room; Agent Schwartz observed a marijuana joint and loose marijuana on a dresser, another joint on the nightstand and a line of what appeared to be crystal methamphetamine on the desk.

16. When the Agents entered Room 211, their identification badges were around their necks and their weapons were concealed. Agent Schwartz directed [Appellee] to get out of the hot tub, which she "eventually did" and told [Appellee] that the Agents believed she had

drugs in the room. [Appellee] was not free to leave the room.

17. Agent Schwartz telephoned District Attorney Dobias and explained to him what he had found in Room 211.

18. While speaking to the District Attorney, [Appellee] interrupted the conversation indicating that she wished to cooperate.

19. Agent Schwartz proffered a "Consent to Search" form to [Appellee].

20. After Agent Schwartz told her twice that she did not have to sign the form, [Appellee] signed the consent form.

21. Pursuant to the consent to search, an immediate inspection of the room uncovered a total of 40.86 grams of crystal methamphetamine, 221.99 grams of marijuana, 3 joints and Three Thousand Two Hundred Twenty ($3,220.00) Dollars in United States currency.

22. During the search, [Appellee] stated that she had picked up twelve (12) bags of crystal methamphetamine for a friend but the friend had not stopped by to pick it up.

Memorandum Opinion, 9/11/06, at 2–6.[2] To the suppression court's recitation of facts, we would add Agent Schwartz's uncontradicted account of "smell[ing] marijuana coming out from underneath the door, burnt marijuana" as he stood outside Appellee's Room 211. *See N.T.*, 7/14/06, at 41; *see also Mistler*, at 396, 912 A.2d at 1268–69 (Where a defendant prevails in the suppression court, "we may consider [ . . . ] so much of the evidence for the Commonwealth as remains uncontradicted when read in the context of the record as a whole.").

---

2. We wish to respond to the Commonwealth's contention that Agent Schwartz's entry into Appellee's hotel room was by her invitation, which it then argues dispensed with the need for probable cause or exigent circumstances to enter her hotel room and observe drugs in "plain view." *See* Commonwealth's brief, at 8, 10, 11, and 13. Albeit Agent Schwartz testified that Appellee responded to a knock on her door with the response, "come in," the manager (Ms. Billings) accompanying the narcotic agent to Room 211 could not remember what Appellee said. *See* N.T. 7/14/06, at 28–29, 42. The suppression court, being the final arbiter of fact and credibility-assessor, entered finding-of-fact number 12, *supra,* that Agent Schwartz received no response to his knock (in other words no "consent") from within the hotel room. Therefore, as an appellate court, we will not invade the bailiwick of the suppression court on credibility issues that are underpinnings for findings-of-fact supported by the record. *See Commonwealth v. Marshall*, 523 Pa. 556, 566, 568 A.2d 590, 595 (1989) ("When faced with a conflict of testimony, we defer to the suppression court, which, as fact[-]finder, passes upon credibility of witnesses, and its findings are not disturbed when supported by the record." (citations omitted)).

Likewise, with regard to finding-of-fact number 13, *supra,* the narcotic agents' use of Ms. Billings to access Appellee's hotel room with her passkey did not legalize their entry and subsequent view of drugs. *Cf. Commonwealth v. Ellsworth*, 421 Pa. 169, 184, 218 A.2d 249, 257 (1966) ("[T]o test the validity of a search without a warrant [ . . . ] of a house, an apartment or hotel room, there is a special and more exacting standard of what is reasonable. [ . . . ] This burden the Commonwealth did not sustain by reliance upon the permission and consent given by the hotel security officer for a search of this room. It is well settled that, 'in the absence of abandonment, a landlord's or hotel's consent to search leased premises is not effective as against the tenant or guest [ . . . ].' " (citations omitted)). Stated otherwise, an unauthorized entry by means of a passkey is equivalent to a forcible entry. *Commonwealth v. McCloskey*, 217 Pa.Super. 432, 272 A.2d 271 (1970). Herein, this translates into a finding that the authorization of entry given by the hotel manager by use of her passkey was not effective against Appellee's right of privacy. *See Commonwealth v. Cerulla*, 223 Pa.Super. 24, 296 A.2d 858, 859 n. 5 (1972).

¶ 4 At the conclusion of the hearing, the suppression court entered an order granting Appellee's motion to suppress, which excluded the evidence seized from Room 211 (drugs and money), Appellee's statement, and her consent to search as a product of detention. *See* Memorandum Opinion, 9/11/06, at 15 ("However, because of the temporal proximity between the detention and the consent for the search and the lack of any intervening circumstances, which would demonstrate that the consent was an act of free will, it is impossible for the Commonwealth to demonstrate that [Appellee's] consent was not the product of the detention. I therefore conclude that because [Appellee's] consent is invalid, the fruits of the consequent search must be suppressed." (citation omitted)). The Commonwealth perfected a timely appeal per Pa.R.A.P. 311(d) and raises but a single question; to-wit:

> Whether the trial court erred in granting [Appellee's] Motion to Suppress and in reaching the conclusion that the agents for the Commonwealth needed a search warrant to enter [Appellee's] hotel room where they had probable cause to make a warrantless arrest, and were invited into the room after knocking and identifying themselves?

Commonwealth's brief, at 7.

¶ 5 Preliminarily, we note that, "A hotel room can clearly be the object of Fourth Amendment protection as much as a home or an office." *Hoffa v. United States*, 385 U.S. 293, 301, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); *Commonwealth v. Cooper*, 240 Pa.Super. 477, 362 A.2d 1041 (1976), *vacated on other grounds*, 468 Pa. 390, 363 A.2d 783 (1976). Further:

> A warrantless search or seizure is presumptively unreasonable under the Fourth Amendment and Article I, § 8, subject to a few specifically established,

well-delineated exceptions. "The 'plain view' doctrine is often considered an exception to the general rule that warrantless searches [and seizures] are presumptively unreasonable, but this characterization overlooks the important difference between searches and seizures."

\* \* \* \*

*Horton [v. California*, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990) ] established the standard for evaluating the constitutionality of seizures made pursuant to the plain view exception to the warrant requirement under the Fourth Amendment. That test includes a determination of whether the police have a lawful right of access to the object seen in plain view. *Horton* explained the determination regarding whether there is a lawful right of access:

> "This is simply a corollary of the familiar principle [ ... ] that no amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances.' Incontrovertible testimony of the senses that an incriminating object is on premises belonging to a criminal suspect may establish the fullest possible measure of probable cause. But even where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure.

In *[Commonwealth v.] Graham* [, 554 Pa. 472, 721 A.2d 1075 (1998) ], [the Pennsylvania Supreme Court] followed similar United States Supreme Court precedent:

> " '[P]lain view' provides grounds for seizure of an item when an officer's access to an object has some prior justification under the Fourth Amendment. 'Plain view' is perhaps better

understood, therefore, not as an independent 'exception' to the warrant clause, but simply as an extension of whatever the prior justification for an officer's 'access to an object' may be." "Therefore, under the Fourth Amendment, an officer may not seize contraband in plain view unless a prior justification provided the officer a lawful 'right of access to the item.' "

The Fourth Amendment requires a federal constitutional threshold determination of whether the police had a lawful right of access to the contraband seen in plain view. *[Commonwealth v.] McCullum* [, 529 Pa. 117, 602 A.2d 313 (1992) ] and *Graham's* adoption of the *Horton* test, including a determination of whether the police have a lawful right of access to the object seen in plain view, was therefore proper. We therefore hold under both the Fourth Amendment and Article I, § 8, the plain view exception to the warrant requirement requires a determination of whether the police have a lawful right of access to the object seen in plain view.

*Commonwealth v. McCree*, 592 Pa. 238, 246–47, 924 A.2d 621, 626–27 (2007) (citations omitted). *Accord Cooper*, 362 A.2d at 1050 (*quoting Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)).

¶ 6 Herein, the record shows that on the 24th day of August, 2005, narcotic agents Schwartz and Antinucci received information from Appellee's nephew that Appellee had marijuana and methamphetamine in Room 211 of the Country Inn—the nephew had just been arrested in Room 309 of the Country Inn for a prior drug transaction. After Agent Schwartz confirmed the odor of marijuana emanating from Appellee's hotel room, he secured the manager to accompany him to Room 211 in case Appellee would not open her door.

¶ 7 When the manager and agents arrived at Room 211, the odor of marijuana was detected by the manager, who stated it was always outside Room 211—Appellee's stay at the hotel had been an extended one. When the manager knocked twice on Appellee's door, no one answered. Likewise, when Agent Schwartz knocked and identified himself, there was no response. As a result, the manager used her pass key to gain entry. As the door was opened, Appellee was observed wearing a bathing suit and sitting in a hot tub. As the agents entered, they observed marijuana and methamphetamine throughout the hotel room. When Appellee exited the tub, the agents stated that they believed she was in possession of drugs and that they told Appellee not to leave the room.

¶ 8 While Agent Schwartz spoke by phone to the district attorney, Appellee interjected that she wanted to cooperate and signed a consent form to that effect. A search of the room produced drugs and money. Thereafter, Appellee was arrested and charged. She then filed a motion to suppress, which was granted by the suppression court. An appeal followed by the Commonwealth claiming that the odor of marijuana was sufficient, in and of itself, to justify entry into Appellee's hotel room. Once entry had been achieved, argues the Commonwealth, what the agents observed inside the hotel room was subject to seizure under the "plain view" doctrine, which dispensed with the need for a search warrant. We disagree.

¶ 9 The law is clear that citizens are protected by both federal and state constitutional provisions from unreasonable searches and seizures. U.S. Const. Amend. IV; Pa. Const. Art. I, § 8. "The protection against unreasonable searches and seizures afforded by the Pennsylvania Constitution is broader than that under the Federal Constitution." *Common-*

*wealth v. Stevenson,* 832 A.2d 1123, 1127 (Pa.Super.2003) (*citing Commonwealth v. Jackson,* 548 Pa. 484, 698 A.2d 571, 573 (1997)).

■ ¶ 10 Warrantless searches and seizures inside a home (hotel room) are presumptively unreasonable unless the occupant consents or probable cause and exigent circumstances exist to justify intrusion. *See McCree, supra; United States v. Coles,* 437 F.3d 361, 365 (3d Cir.2006); *United States v. Rubin,* 474 F.2d 262, 268 (3d Cir.1973), *cert. denied by Agran v. United States,* 414 U.S. 833, 94 S.Ct. 173, 38 L.Ed.2d 68 (1973).

¶ 11 In *Rubin,* the Third Circuit Court of Appeals said, "Probable cause to believe contraband is present is necessary to justify a warrantless search, but it alone is not sufficient [ . . . ]. Mere probable cause does not provide the exigent circumstances necessary to justify a search without a warrant." *Id.,* 474 F.2d at 268.

¶ 12 The Court in *Coles* re-examined the exigent circumstances exception to the warrant requirement. *Coles,* 437 F.3d at 366. It recognized that exigent circumstances exist if there is the possibility that evidence may be removed or destroyed. *Id.,* 437 F.3d at 366. The Court noted, however, that exigent circumstances do not meet Fourth Amendment standards if the government deliberately creates them. *Id.,* 437 F.3d at 366 (citations omitted).

¶ 13 In *Johnson v. United States,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948), a Seattle police officer (Detective Lieutenant Belland) working narcotics investigation received information from a confidential informant, who was also a known narcotic user, that unknown persons were smoking opium in the Europe Hotel. After the informant was taken to the hotel, he returned to confirm to the police that he could smell burning opium in the hallway. Within an hour and one-half of the informant's sensory perception of opium, Seattle and federal narcotic agents went back to the hotel and recognized a strong odor of burning opium being emitted from Room 1. The police were unaware of who occupied the room, but they knocked and a voice asked who was there. "Lieutenant Belland," was the reply. Once the hotel room door was opened, the police advised the occupant that they wanted to talk about the opium smell in the room. Once inside, the police advised the occupant that she was under arrest. A search of the room uncovered incriminating opium and smoking apparatus, the latter being warm from apparent recent usage. Defendant's efforts to suppress the evidence proved fruitless. Conviction resulted, and the Circuit Court of Appeals affirmed.

¶ 14 The defendant appealed challenging the search of her hotel room as a violation of the Fourth Amendment to the United States Constitution. The Government defended its actions as legally justifiable, more particularly as incident to what it urged was a lawful arrest of the defendant. The United States Supreme Court reversed the defendant's conviction after holding that the defendant's Fourth Amendment rights against unreasonable searches and seizures had been violated because no warrant had been issued prior to seizure of the incriminating evidence. In the course of doing so, the high Court wrote, as herein relevant:

> If the presence of odors is testified to before a magistrate and he finds the affiant qualified to know the odor, and it is one sufficiently distinctive to identify a forbidden substance, this Court has never held such a basis insufficient to justify issuance of a search warrant. Indeed it might very well be found to be evidence of most persuasive character.

The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers. Crime, even in the privacy of one's own quarters, is, of course, of grave concern to society, and the law allows such to be reached on proper showing. The right of officers to thrust themselves into a home is also a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or government enforcement agent.

There are exceptional circumstances in which, on balancing the need for effective law enforcement against the right of privacy, it may be contended that a magistrate's warrant for search may be dispensed with. But this is not such a case. No reason is offered for not obtaining a search warrant except the inconvenience to the officers and some slight delay necessary to prepare papers and present the evidence to a magistrate. These are never very convincing reasons and, in these circumstances, certainly are not enough to bypass the constitutional requirement. No suspect was fleeing or likely to take flight. The search was of permanent premises, not of a movable vehicle. No evidence or contraband was threatened with removal or destruction, except perhaps the fumes which we suppose in time would disappear. But they were not capable at any time of being reduced to possession for presentation to court. The evidence of their existence before the search was adequate and the testimony of the officers to that effect would not perish from the delay of getting a warrant.

If the officers in this case were excused from the constitutional duty of presenting their evidence to a magistrate, it is difficult to think of a case in which it should be required.

*Johnson,* 333 U.S. at 13–15, 68 S.Ct. 367 (footnote omitted).

¶ 15 This Court addressed the issue of police entry without a warrant and exigent circumstances in *Commonwealth v. Demshock,* 854 A.2d 553 (Pa.Super.2004). We observed there that various factors need to be taken into account to assess the presence of exigent circumstances; for example: (1) the gravity of the offense; (2) whether the suspect is reasonably believed to be armed; (3) whether there is a clear showing of probable cause; (4) whether there is a strong reason to believe that the suspect is within the premises being entered; (5) whether there is a likelihood that the suspect will escape if not swiftly apprehended; (6) whether the entry is peaceable; (7) the timing of the entry; (8) whether there is hot pursuit of a fleeing felon; (9) whether there is a likelihood that evidence will be destroyed if police take the time to obtain a warrant; and (10) whether there is a danger to police or other persons inside or outside of the dwelling to require immediate and swift action. *Demshock,* 854 A.2d at 555–56.

¶ 16 Applying the afore-cited precepts to the present case, we hold that the entry of the police into Appellee's hotel room was illegal. The police were not in hot pursuit of a fleeing felon, there was no danger to anyone justifying immediate entry, the offense (simple possession of marijuana) was not grave in the sense of danger or injury to anyone, there was no information that Appellee was armed, and there was no evidence that Appellee would escape if they did not enter at that moment or that evidence would be destroyed. It must be recalled that the police's information that Appellee was using marijuana and methamphetamine in Room 211 came from her nephew, who was in custody at the exact time entry was obtained into Appellee's hotel room. Thus, there is no reason to believe that Appellee could have received advance notice of the police's intentions so as to flee or destroy evidence. Further, the search was of permanent premises, not of a movable vehicle. *See Johnson, supra.*

¶ 17 On the contrary, the dangers that did arise and the circumstances that did become exigent did not occur until the police announced their presence and identity, which was followed immediately by entry into Appellee's hotel room. In other words, the actions of the police created the exigency here. The police could have secured a search warrant prior to Appellee realizing that an investigation was under way. *See Johnson, supra.* The probable cause to arrest Appellee was based in part on what was observed in the hotel room. And, because the police were not in a position where they were entitled to be when they observed the content of the premises (drugs and money), the "plain view" doctrine does not come into play to sanitize their illegal entry into Appellee's hotel room. *See McCree, supra; see also Commonwealth v. Swenda,* 2006 Pa. Dist. & Cnty. Dec. LEXIS 282 (filed December 8, 2006).

¶ 18 We conclude that entry into Appellee's hotel room was not supported by an exigency justifying the warrantless intrusion.[3] If there were any exigencies, they were the by-product of the police's decision to make a warrantless entry rather than secure a search warrant. Accordingly, we find that the search and seizure of evidence was unconstitutional and the fruits of the search and seizure are suppressible, which includes Appellee's statement and her consent form. *See* Memorandum opinion, 9/11/06, at 15 (temporal span between illegal entry and consent is not so attenuated as to validate subsequent police search).

¶ 19 Order affirmed.

---

**3.** Albeit the odor of marijuana has been held sufficient to establish the probable cause necessary to believe a crime is being committed to justify an arrest, *see Commonwealth v. Pullano,* 295 Pa.Super. 68, 440 A.2d 1226 (1982) (Opinion by Wieand, J., concurred in result by Hoffman, J.; Price, J., did not participate in the consideration or decision of this case), the absence of the conjunctive presence of "exigent circumstances" herein precludes the warrantless entry into Appellee's hotel room. *See Johnson; McCree; Demshock, supra.*