J-A19004-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
        Appellee :
:
        v. :
:
JAQUISE JOSEPH THOMAS :
:
        Appellant : No. 179 MDA 2018

Appeal from the Judgment of Sentence January 11, 2018
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0000988-2017

BEFORE: GANTMAN, P.J., NICHOLS, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY GANTMAN, P.J.: **FILED NOVEMBER 21, 2018**

Appellant, Jaquise Joseph Thomas, appeals from the judgment of sentence entered in the Dauphin County Court of Common Pleas, following his jury trial convictions for possession with intent to deliver ("PWID"), possession of a small amount of marijuana, possession of drug paraphernalia, conspiracy, and false identification to law enforcement.[1] We affirm.

The relevant facts and procedural history of this case are as follows.

> Swatara Township Police Officer Patrick Walsh…was on routine patrol in the early morning hours of February 6, 2017. Officer Walsh was at the Howard Johnson Motel[, which was known for drug-related activity,] on Eisenhower Boulevard, Harrisburg, PA[,] and was walking the hallway when he saw…Appellant in a doorway. Appellant immediately shut the door and Officer Walsh proceeded to go up to the door and immediately smelled burnt marijuana.

---

[1] 35 P.S. §§ 780-113(a)(30), (31), (32); 18 Pa.C.S.A. §§ 903, 4914(a), respectively.

Officer Walsh knocked several times and after a couple of minutes [Dnasia Peterson] answered the door. The odor of marijuana was much stronger when the door was opened.

Officer Walsh talked to [Appellant] who told Officer Walsh that [Appellant] had some friends over earlier who were smoking [marijuana]. Officer Walsh told…Appellant that this was now a drug investigation due to the smell and Appellant gave the name of John Thompson. Officer Walsh was given permission [by Appellant] to search the room[, which was registered to Jamie Pacheco,] and waited for backup to arrive. As Officer Walsh searched the room, he discovered a marijuana blunt that…Appellant said was his and [also] discovered a digital scale underneath the bed. Next, Officer Walsh found a bag containing men's clothing and two cardboard boxes that contained 50-100 small [plastic] baggies. At this point, [Appellant] told Officer Walsh that he [was] not permitted to search [the bag of clothing]. Officer Walsh stopped the search and obtain[ed] a search warrant. Officer David Ritter, of the Swatara Township Police, returned and informed Officer Walsh that…Appellant had given the wrong name.

As [Ms. Peterson] was being arrested, a bag containing numerous bundles of heroin fell out of her right front pocket. Both Ms. Peterson and…Appellant were placed under arrest and read their **Miranda**[2] rights. As this was happening, Appellant claimed that the bags of heroin…were his.

Trial Court Opinion, filed March 9, 2018, at 3-4 (internal citations omitted).

After officers removed Appellant and Ms. Peterson from the hotel room, Officer Walsh found a straw with heroin residue and a candy bag that contained marijuana.

On October 31, 2017, Appellant filed a motion to suppress. The court held a suppression hearing on November 16, 2017, and denied Appellant's

---

[2] **Miranda v. Arizona**, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

suppression motion on December 7, 2017. The following day, a jury convicted Appellant of PWID, possession of a small amount of marijuana, possession of drug paraphernalia, conspiracy, and false identification to law enforcement. On January 11, 2018, the court sentenced Appellant to an aggregate term of 30 to 72 months' imprisonment plus 1 year of probation. Appellant timely filed a notice of appeal on January 22, 2018. On February 1, 2018, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b); Appellant timely complied on February 21, 2018.

Appellant raises the following issue for our review:

> DID NOT THE COURT ERR IN DENYING [APPELLANT'S] MOTION TO SUPPRESS WHEN THE POLICE EFFECTED A WARRANTLESS, NON-EXIGENT ENTRY INTO A HOTEL ROOM WHERE [APPELLANT] WAS AN OVERNIGHT GUEST AND WHEN THE KNOWINGNESS AND VOLUNTARINESS OF ANY SUBSEQUENT CONSENT TO SEARCH WAS VITIATED BY THE UNLAWFUL ENTRY?

(Appellant's Brief at 4).

"Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." **Commonwealth v. Hope L. Williams**, 941 A.2d 14, 26 (Pa.Super. 2008) (*en banc*) (quoting **Commonwealth v. Jones**, 874 A.2d 108, 115 (Pa.Super. 2005)).

> [W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains

- 3 -

uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

**Williams, supra** at 27 (quoting **Jones, supra**).

Appellant argues that, as an overnight guest in a hotel room, he had a reasonable expectation of privacy and standing to contest unlawful police activity. Appellant complains Officer Walsh unconstitutionally entered beyond the doorway of the hotel room without acquiring consent or articulating exigent circumstances. Appellant avers that Officer Walsh did not see Appellant with any contraband outside of the room; Appellant did not flee into his hotel room but merely backed into the room and closed the door; and Appellant had no knowledge that Officer Walsh would walk down the corridor and position himself outside the hotel room. Appellant submits Officer Walsh created his own exigency by insisting on knocking and entering the hotel room after he smelled marijuana, when at that point, he could have obtained a search warrant. Appellant concedes he consented to a search but maintains the consent happened after Officer Walsh had illegally entered the hotel room, which vitiated any consent Appellant gave after the illegal entry. Appellant contends all physical evidence and statements police obtained that night are fruit of the initial illegal entrance. Appellant concludes the court erred in denying his motion to suppress, and this Court should vacate the judgment of sentence and remand for a new trial. We disagree.

"The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals against unreasonable searches and seizures." ***Commonwealth v. Hudson***, 92 A.3d 1235, 1241 (Pa.Super. 2014), *appeal denied*, 630 Pa. 734, 106 A.3d 724 (2014). Article I, Section 8 can provide no less protection than what the Fourth Amendment requires. ***Commonwealth v. McCree***, 592 Pa. 238, 246, 924 A.2d 621, 626 (2007). "A defendant moving to suppress evidence has the preliminary burden of establishing standing and a legitimate expectation of privacy." ***Commonwealth v. Maldonado***, 14 A.3d 907, 910 (Pa.Super. 2011). Importantly,

> The traditional formulation for standing requires a defendant to demonstrate one of the following personal interests: (1) his presence on the premise at the time of the search and seizure; (2) a possessory interest in the evidence improperly seized; (3) that the offense charged includes as an essential element of the prosecution's case, the element of possession at the time of the contested search and seizure; or (4) a proprietary or possessory interest in the searched premises.

***Commonwealth v. Bostick***, 958 A.2d 543, 551 (Pa.Super. 2008), *appeal denied*, 604 Pa. 702, 987 A.2d 158 (2009) (internal citation omitted).

"[G]enerally under Pennsylvania law, a defendant charged with a possessory offense has automatic standing to challenge a search." ***Maldonado, supra*** at 910. Under this general rule, a defendant is entitled to a review of the merits of his suppression motion without a preliminary showing of ownership or possession of the premises or items seized.

***Commonwealth v. Enimpah***, 630 Pa. 357, 363-64, 106 A.3d 695, 698 (2014).  In addition to standing, a defendant must also show he had a reasonable expectation of privacy.  ***Id.***

"An expectation of privacy will be found to exist when the individual exhibits an actual or subjective expectation of privacy and that expectation is one that society is prepared to recognize as reasonable."  ***Commonwealth v. Viall***, 890 A.2d 419, 422 (Pa.Super. 2005).  "In determining whether a person's expectation of privacy is legitimate or reasonable, the totality of the circumstances must be considered and the determination will ultimately rest upon a balancing of the societal interests involved."  ***Id.***

A hotel room can have the same Fourth Amendment protection as a home or an office.  ***Commonwealth v. Dean***, 940 A.2d 514, 519 (Pa.Super. 2008).  "[A] registered hotel guest enjoys a legitimate expectation of privacy in a hotel room during the period of time in which the room rental remains valid."  ***Commonwealth v. Dion Jerry Williams***, 165 A.3d 994, 1000 (Pa.Super. 2017), *appeal denied*, ___ Pa. ___, 179 A.3d 6 (2018). "Warrantless searches and seizures inside a home (hotel room) are presumptively unreasonable unless the occupant consents or probable cause and exigent circumstances exist to justify intrusion."  ***Dean, supra*** at 521.

"The central Fourth Amendment inquiries in consent cases entail assessment of the constitutional validity of the citizen/police encounter giving rise to the consent; and, ultimately, the voluntariness of consent.  Where the

underlying encounter is found to be lawful, voluntariness becomes the exclusive focus." **Commonwealth v. Moultrie**, 870 A.2d 352, 356 (Pa.Super. 2005) (quoting **Commonwealth v. LaMonte**, 859 A.2d 495 (Pa.Super. 2004)) (internal quotation marks omitted).

> In determining the validity of a given consent, the Commonwealth bears the burden of establishing that a consent is the product of an essentially free and unconstrained choice—not the result of duress or coercion, express or implied, or a will overborne—under the totality of the circumstances. The standard for measuring the scope of a person's consent is based on an objective evaluation of what a reasonable person would have understood by the exchange between the officer and the person who gave the consent. Such evaluation includes an objective examination of the maturity, sophistication and mental or emotional state of the defendant…. Gauging the scope of a defendant's consent is an inherent and necessary part of the process of determining, on the totality of the circumstances presented, whether the consent is objectively valid, or instead the product of coercion, deceit, or misrepresentation.

**Commonwealth v. Smith**, 621 Pa. 218, 236, 77 A.3d 562, 573 (2013) (internal citations and quotation marks omitted). Furthermore,

> [T]here is no requirement that a police officer advise a person that he…may refuse consent to be searched. Unless the totality of factors indicate[s] that the consent was the product of express or implied duress or coercion…the mere fact that a police officer did not specifically inform an appellant that he…could refuse the request will not in and of itself result in a determination that the subsequent search was involuntary.

**Moultrie, supra** at 360 (citing **Commonwealth v. Key**, 789 A.2d 282, 291 (Pa.Super. 2001)).

The United States Supreme Court recently held "as a general rule,

someone in otherwise lawful possession and control of a rental car has a reasonable expectation of privacy in it even if the rental agreement does not list him or her as an authorized driver." ***Byrd v. U.S.***, \_\_\_ U.S. \_\_\_, \_\_\_, 138 S.Ct. 1518, 1524, 200 L.Ed.2d 805, \_\_\_ (2018). The Supreme Court reasoned a common-law property interest in the place searched is not always needed for a person to claim a reasonable expectation of privacy. ***Id.*** Thus, the lack of authorization to drive a rental car does not eliminate an individual's expectation of privacy in the vehicle, as long as the individual is in lawful possession and control over the car. ***Id.***

Here, Appellant had a reasonable expectation of privacy based on his lawful presence within the hotel room. The room was registered to Ms. Pacheco and not Appellant or Ms. Peterson. There is, however, no dispute that Appellant and Ms. Peterson were lawfully present and had control over the hotel room. ***See id.*** Because Article I, Section 8 cannot give less protection than the Fourth Amendment, Appellant had a reasonable expectation of the privacy in the hotel room. ***See McCree, supra***; ***Dion Jerry Williams, supra***; ***Viall, supra***. Therefore, we will evaluate the validity of Appellant's consent to search as an exception to the warrant requirement.

The trial court analyzed this case as follows:

> Here, Officer Walsh, who has been investigating drug related offenses over the past three years and specifically at the hotel in question, was on routine patrol in the early morning hours of February 6, 2017. While walking the Howard Johnson Hotel, Officer Walsh turned the corner and saw [Appellant] standing in a doorway. [Appellant]

immediately went inside and shut the door. Officer Walsh approached the door and detected an odor of burnt marijuana. He knocked on the door and heard a male voice respond. Officer Walsh [identified himself] and kept knocking. Officer Walsh testified that he "could hear people inside rustling around, movement and stuff." After waiting nearly three minutes, [Ms. Peterson opened] the door. When the door was opened, a stronger odor of marijuana was detected by Officer Walsh. Having detected a strong odor of marijuana coming from the hotel room, Officer Walsh had probable cause to obtain a search warrant. …

Officer Walsh then asked Appellant if he could search the hotel room and Appellant gave his consent. Officer Walsh waited for back-up to arrive and then once again asked [Appellant] if [Officer Walsh] could search the hotel room. Officer Walsh described his interaction with Appellant as conversational. Officer Walsh began searching the room and at some point, [Appellant] withdrew his permission to search the room. At this point, Officer Walsh stopped his search and obtained a search warrant. [Appellant] was asked two times whether he would consent to the search of the hotel room and twice (one in front of several officers) gave his consent. Additionally, Appellant was aware of his actions because as soon as Officer Walsh began searching in the bag of clothing, Appellant withdrew his consent. Officer Walsh then properly obtained a search warrant. Here, Appellant voluntarily gave his consent and when the Appellant withdrew his consent, the [o]fficers respected that decision and obtained a valid search warrant.

Trial Court Opinion at 8-9 (internal citations and footnote omitted). We agree with the court's rationale and adopt its reasoning. *See Smith, supra*; *Moultrie, supra*.

Ms. Peterson voluntarily opened the door after Officer Walsh knocked and announced himself. Neither Ms. Peterson nor Appellant objected to Officer Walsh's presence in the doorway, even though they both had the right to exclude him from the room. *See Dean, supra*. Thereafter, Officer Walsh

- 9 -

twice asked Appellant if he consented to a search of the room; and Appellant answered affirmatively both times. *See id.* Nothing in the record suggests Officer Walsh coerced Appellant to consent to a search. *See Smith, supra*. Further, Appellant objected to the search when Officer Walsh went through a bag of clothes, which suggests Appellant understood his right to refuse consent. *See Moultrie, supra*. Officer Walsh immediately stopped the search and obtained a search warrant. Under the totality of the circumstances, Appellant's consent to search was voluntary and valid; and the trial court properly denied Appellant's motion to suppress. *See Dean, supra*. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/21/2018