J-S23010-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DYLAN VALLADARES | : | |
| | : | |
| Appellant | : | No. 2293 EDA 2023 |

Appeal from the Judgment of Sentence Entered April 20, 2023
In the Court of Common Pleas of Montgomery County
Criminal Division at No: CP-46-CR-0003856-2021

BEFORE:  STABILE, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY STABILE, J.:                **FILED FEBRUARY 02, 2026**

Appellant, Dylan Valladares, appeals from the judgment of sentence imposed on April 20, 2023, by the Court of Common Pleas of Montgomery County.  Appellant was charged with possession of firearms prohibited and multiple drug-related offenses.  He filed a motion to suppress, which was denied.  A jury found Appellant guilty of the drug offenses and the Commonwealth withdrew the firearm offense.  Appellant was sentenced to an aggregate 25 to 50 months' imprisonment.  He now challenges the denial of his suppression motion, as well as the sufficiency of the evidence to support his convictions.  Upon review, we affirm.

The suppression court made the following findings of fact:

3. On June 12, 2021, at approximately 5:50 p.m., Upper Merion police officers responded to the Motel 6 . . . due to a call placed to dispatch in which the female caller stated that there was a large

amount of marijuana and guns in Room 263. The caller said that marijuana was being sold from Room 263.

4. The police dispatcher relayed to the officers that the room would be registered to a Dylan Baradelli (ph.) or Baradais (ph.) or something along that line. Dispatch advised that Room 263 could be occupied by two (2) black males and one black female.

5. While the caller was anonymous, she did provide a call-back number to the dispatcher.

* * * *

10. Upon arriving at the Motel 6, [Officer Gerald Davis ("Ofc. Davis")] spoke with the female clerk at the front desk. She told Ofc. Daivs that about 20 minutes before the arrival of police, a black female entered the motel and asked for a key to Room 263. The clerk gave her a key to Room 263. A short time later, the same female, who was agitated, walked through the lobby yelling that she was going to call the police and then exited the motel.

11. Ofc. Davis asked the front desk clerk for a printout of the registered guest's name of Room 263. The name on the printout was Dylan Antonio Roberto. . . .

12. Ofc. Davis believed that the female who had requested the key to Room 263 was probably the female who called police.

13. [Ofc. Davis testified that the Motel 6 was a high-crime, high-drug area. He responded to multiple calls for fights, domestic disputes, sex work, guns, and homicide.] Accordingly, besides Ofc. Davis and [Officer Susan Bednar ("Ofc. Bednar")], four (4) additional back-up officers responded to the motel.

* * * *

16. [All six officers proceeded to Room 263.] Before knocking on the door, Ofc. Davis heard a good deal of noise coming from the room [and] believed there were more than two or three people in the room.

17. Ofc. Davis knocked on the door, stated that it was the police, and requested someone to come to the door. He knocked again

- 2 -

and stated that it was the police. Ofc. Davis's tone of voice was conversational.

18. Ofc. Davis believe[d] a female opened the door. The door was opened about 10-12 inches. Ofc. Davis asked if everything was okay. From his vantage point, Ofc. Davis saw through a mirror on the left side of the room a hand holding a black and silver gun. The hand made a sweeping motion and put the gun in a green bag. Ofc. Davis believed this gun was being concealed.

19. Upon seeing this, Ofc. Davis announced "gun" in a loud voice and directed everybody to exit the room with their hands raised. Six people (five males and one female) exited the room (including [Appellant]). They were placed in handcuffs for safety reasons. Ofc. Davis, concerned that an individual or individuals may still be in the room and aware that he had seen a gun being placed in a bag in the room, conducted a sweep of the room with Ofc. Bednar to determine if anyone else was in the room.

* * * *

21. As shown on police body cameras, Officers Davis and Bednar were in the room for a very brief time during this sweep.

22. While in Room 263, Ofc. Bednar observed in plain view what appeared to be a large amount of marijuana in vacuum-sealed bags located in an open duffle bag. Ofc. Bednar did not have to open or move the duffle bag to observe the suspected marijuana. She informed Ofc. Davis of seeing the suspected marijuana, and they exited the room and secured it.

23. Ofc. Davis then called Detective Jay Nakahara ("Det. Nakahara") . . . and asked if he was available to come to the scene.

* * * *

26. When Det. Nakahara arrived at the motel, the occupants of Room 263 were outside the room lying on their stomachs. . . . [Appellant] provided [his] name to the police. . . . [Appellant] was taken into custody because he was the registered guest of the motel room in which police saw a large amount of suspected marijuana in plain view.

\* \* \* \*

29. Det. Nakahara spoke with Room 263's registered guest, [Appellant]. Det. Nakahara identified himself to [Appellant] as an Upper Merion Police detective and immediately verbally advised [Appellant] of his **Miranda**[1] rights.

30. [Appellant] stated that he understood his **Miranda** rights, and he was willing to speak with Det. Nakahara.

31. When asked by Det. Nakahara if he had rented Room 263 on June 12th, [Appellant] answered in the affirmative.

32. Det. Nakahara questioned [Appellant] about the strong odor of marijuana coming from the room, and [Appellant] stated that he had a Pennsylvania medical marijuana card. . . .

33. [Appellant] consented to Det. Nakahara retrieving this card [from his pants pocket]. Det. Nakahara observed that the medical marijuana card had expired.

34. Det. Nakahara [applied for and obtained a search warrant for Room 263.]

35. The search warrant was executed about 9 p.m. on June 12th.

36. Police seized the following items during the search of Room 263: three (3) handguns (each of which had a magazine loaded with ammunition); a pistol magazine that had a grip extension attached to it; a rifle magazine loaded with ammunition; a bulk quantity (approximately two (2) pounds) of suspected marijuana in clear, vacuum-sealed plastic packaging; numerous marijuana branding labels; five (5) brown glass bottles containing numerous quantities of suspected alprazolam (Xanax); white, rectangular pills that were strewn about the floor (suspected alprazolam); $4,500 in U.S. currency; a black Apple iPhone XR believed to belong to [Appellant]; and personal checks bearing the name of [Appellant].

---

[1] **Miranda v. Arizona**, 384 U.S. 436 (1966).

Order Sur: Suppression, 6/29/22, at 2-5. Appellant was charged with three counts each of manufacture, delivery, or possession with intent to manufacture or deliver ("PWI"); intentional possession of a controlled substance by a person not registered; use/possession of drug paraphernalia; and possession of firearm prohibited.

Appellant filed a motion to suppress and argued that: (1) the police conducted a warrantless entry and search of his motel room without probable cause or exigent circumstances; (2) the police unlawfully seized evidence from the motel room based on the unjustified warrantless entry and search; and (3) the police unlawfully seized [Appellant] without probable cause. A hearing was held on April 18, 2022,[2] and at its conclusion, the court directed the parties to submit briefs. The court then heard additional argument on June 7, 2022. The suppression court denied Appellant's motion on June 29, 2022.

Following a three-day jury trial, Appellant was found guilty of PWI, intentional possession of a controlled substance, and use/possession of drug paraphernalia. The Commonwealth withdrew the firearms offenses prior to trial. Sentencing was deferred for a pre-sentence investigation. On April 20, 2023, Appellant was sentenced to an aggregate 25 to 50 months of incarceration, followed by one year of probation. Appellant filed a post-

---

[2] Appellant's suppression hearing was combined with his co-defendant, Keshawn Scott. However, the court made specific findings for each defendant.

sentence motion, which was denied on August 23, 2023. This appeal followed.[3] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues on appeal:

1. Whether the suppression court erred in denying Appellant's pre-trial motion to suppress evidence where the police conducted a warrantless entry and search [of] Appellant's hotel room without probable cause and exigent circumstances to justify the unlawful intrusion; where the police lacked a reasonable basis to conduct a protective sweep of the hotel room; and where the police conduct violated Appellant's right against unreasonable search and seizure as guaranteed by the Fourteenth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution[.]

2. Whether there was insufficient evidence to prove that, on or about June 12, 2021, Appellant possessed any controlled substances inside a hotel room where he was present with five other individuals who each had equal access and power to control the bags and containers in which controlled substances were found, and where there was no fingerprint, DNA, or any other evidence directly tying Appellant to a bag or container in which a large volume of a controlled substance was found.

Appellant's Brief, at 5.

Our standard of review when addressing a challenge to the denial of a suppression motion is

> limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*. Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted.

---

[3] The trial court record was not received in this Court until November 7, 2024, after several notices from this Court.

***Commonwealth v. Yandamuri***, 159 A.3d 503, 516 (Pa. 2017) (internal citations omitted). Our scope of review is limited to the record created during the suppression hearing. ***In re L.J.***, 79 A.3d 1073, 1085 (Pa. 2013).

"It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." ***Commonwealth v. Luczki***, 212 A.3d 530, 542 (Pa. Super. 2019). "If there is sufficient evidence of record to support the suppression court's ruling and the court has not misapplied the law, we will not substitute our credibility determinations for those of the suppression court judge." ***Commonwealth v. Johnson***, 86 A.3d 182, 187 (Pa. 2014).

Appellant argues that police lacked reasonable suspicion and/or probable cause to conduct a protective sweep and warrantless search of his motel room. Appellant's Brief, at 17-19. He contends that the anonymous tip did not establish reasonable suspicion to believe criminal activity was afoot in Room 263. ***Id.*** at 18. Appellant further argues that possession of a firearm within a motel room is legal and "[o]bservation of a firearm concealed on a person does not establish reasonable suspicion that the person is engaged in criminal activity." ***Id.*** Moreover, he maintains that there was a lack of exigent circumstances to justify a warrantless entry because Officer Davis testified

that "seeing the gun inside the hotel room did not pose a safety threat[.]"[4] *Id.* at 19.

The Fourth Amendment to the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution protect citizens against unreasonable searches and seizures by law enforcement. *See* U.S. Const. amend. IV; Pa. Const. Art. I, § 8. In Pennsylvania, "[w]arrantless searches and seizures inside a home (hotel room) are presumptively unreasonable unless the occupant consents or probable cause and exigent circumstances exist to justify the intrusion." *Commonwealth v. Dean*, 940 A.2d 514, 521 (Pa. Super. 2008). While probable cause to believe contraband is present is necessary to justify a warrantless search, it does not provide the exigent circumstances to justify a search without a warrant. *Id.* "[E]xigent circumstances exist if there is the possibility that evidence may be removed or destroyed." *Id.* However, "police cannot rely upon exigent circumstances to justify a warrantless entry where the exigency derives from their own actions." *Commonwealth v. Demshock*, 854 A.2d 553, 557 (Pa. Super. 2004).

Here, the suppression court found that entry into Room 263 was lawful pursuant to the protective sweep exception to the warrant requirement. *See*

---

[4] This statement was made during the trial, and not the suppression hearing. We are limited to the facts as they were presented during the suppression hearing. *In re L.J.*, *supra*.

Order Sur: Suppression, 6/29/22, at 10. It acknowledged that generally, the exception applies where the protective sweep is incident to arrest. *Id.* "However, the protective sweep doctrine has been applied prior to an arrest being effectuated where exigent circumstances exist." *Id.* (citing *Commonwealth v. Witman*, 750 A.2d 327 (Pa. Super. 2000)).

A number of factors are to be considered when determining whether exigent circumstances exist: (1) the gravity of the offense; (2) whether the suspect is reasonably believed to be armed; (3) whether there is a clear showing of probable cause; (4) whether there is a strong reason to believe that the suspect is within the premises being entered; (5) whether there is a likelihood that the suspect will escape if not swiftly apprehended; (6) whether the entry was peaceable; (7) the timing of entry; (8) whether there is hot pursuit of a fleeing felon; (9) whether there is a likelihood that evidence will be destroyed if police take the time to obtain a warrant; and (10) whether there is a danger to police or other persons inside or outside the dwelling to require immediate action. *Dean*, 940 A.2d at 522.

Applying these factors to the instant case, we conclude that the trial court did not err in concluding that the protective sweep of Appellant's hotel room was lawful based on exigent circumstances. It was undisputed that officers received an anonymous tip that there were two to three people in Room 263 with marijuana and multiple guns on the bed.

Police corroborated the initial 911 call in multiple respects. The caller was a female who did not leave her name, but left a call back number. She stated that the room was rented to "Dylan," and the room in fact had been rented to a person by that name.

Officers further confirmed with the front desk clerk that a female had come in 20 minutes earlier, asked for a key to Room 263, and gone up to the room; she returned a short time later, agitated and yelling that she was going to call the police. Someone from Room 263 then called the front desk and told them not to give a key to anyone. N.T. Suppression, 4/18/22, at 16. Additionally, the motel was known for criminal activity, including drug sales and crimes of violence. Based on this information, officers believed that the 911 caller was the same female that interacted with the front desk and proceeded to Room 263 to "find out why somebody would call [the police] and we could speak to whoever was inside of the room." *Id.* at 20. The noise within the motel room indicated to officers that there were more than three people inside. Officer Davis knocked on the door and announced that he was a police officer. A woman opened the door enough for Officer Davis to observe an individual who appeared to conceal a firearm inside a green bag. This once again confirmed the anonymous caller, who had asserted there were firearms in the hotel room.

We now apply the exigent circumstance factors to this case. As the officers were investigating a potential drug sale by armed perpetrators, the

gravity of the offense was moderate to high.[5]   Officer Davis saw someone armed with a handgun inside the room.   Upon seeing the gun being concealed, coupled with the information already known to officers, there was probable cause at that point to believe there was evidence of a crime inside the motel room.   Likewise, officers knew that "Dylan" was the subject of the tip, as well as the registered occupant of Room 263.   Thus, it was highly likely that this person, "Dylan" (Appellant) was inside the room.

Based on the configuration of the motel, it was unlikely that a swift arrest was necessary to prevent the subject of the tip, Appellant, from escaping.   However, he would have escaped if not swiftly apprehended. Significantly, there was a strong likelihood that evidence would be destroyed if officers had to wait for a warrant.   *See, e.g., Commonwealth v. Bostick*, 958 A.2d 543, 557 (Pa. Super. 2008) (concluding that exigent circumstances existed, in part, because of the likelihood that evidence would be destroyed where police were conducting surveillance of suspected drug activity); *see also Commonwealth v. Walker*, 836 A.2d 978, 981 (Pa. Super. 2003) (concluding there was a strong likelihood that evidence would be destroy "because drugs and crack pipes may be easily disposed").   Accordingly, we conclude that the trial court's finding factual findings are supported by the

---

[5] The offense gravity score for possession with intent to deliver marijuana ranges from 3 to 10 depending on the weight.   *See* 204 Pa. Code. § 303.15 (offense listing).   The offense gravity score for possession of a firearm prohibited ranges from 3 to 11 depending on the underlying conviction.   *Id.*

record and that the trial court did not err as a matter of law in ruling that the search satisfied the protective sweep exception to the constitutional warrant requirement. Thus, no relief is due.

Appellant next challenges the sufficiency of the evidence to support his convictions. Specifically, he challenges the element of possession. *See* Appellant's Brief, at 24. He argues that there were five other people in the motel room who had equal access and power to control the controlled substances. *Id.* For a challenge to the sufficiency of the evidence, our standard of review is:

> whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact, while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence.

*Commonwealth v. Smith*, 206 A.3d 551, 557 (Pa. Super. 2019) (citation omitted).

To sustain a conviction for possession of a controlled substance, the Commonwealth must prove that Appellant knowingly or intelligently

possessed a controlled substance without being properly registered to do so under the Controlled Substance, Drug, Device and Cosmetic Act ("the Act"). *See* 35 P.S. § 780-113(a)(16). To sustain a conviction for PWI, the Commonwealth must prove an additional element – that Appellant possessed the controlled substance with the intent to manufacture or deliver it. *See* 35 P.S. § 780-113(a)(30). Appellant was not found with contraband on his person; therefore, the Commonwealth was required to prove that Appellant had constructive possession of the controlled substances to support his convictions. *See Commonwealth v. Brown*, 48 A.3d 426, 430 (Pa. Super. 2012).

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as "conscious dominion." We subsequently defined "conscious dominion" as "the power to control the contraband and the intent to exercise that control." To aid application, we have held that constructive possession may be established by the totality of the circumstances.

*Id.* (citation omitted).

To find constructive possession, the power and intent to control the contraband does not need to be exclusive to the defendant:

> Our Supreme Court has recognized that constructive possession may be found in one or more actors where the item [at] issue is in an area of joint control and equal access. Nevertheless, where more than one person has equal access to where drugs are stored, presence alone in conjunction with such access will not prove conscious dominion over the contraband.

- 13 -

For the Commonwealth to prove constructive possession where more than one person has access to the contraband, the Commonwealth must introduce evidence demonstrating either [the defendant's] participation in the drug related activity or evidence connecting [the defendant] to the specific room or areas where the drugs were kept. However, [a]n intent to maintain a conscious dominion may be inferred from the totality of the circumstances . . . [and] circumstantial evidence may be used to establish a defendant's possession of drugs or contraband. Moreover, we agree with the statement from the United States Court of Appeals for the Tenth Circuit that, although "mere presence" at a crime scene cannot alone sustain a conviction for possession of contraband:

> a jury need not ignore presence, proximity and association when presented in conjunction with other evidence of guilt. Indeed, presence at the scene where drugs are being processed and packaged is a material and probative factor which the jury may consider. Drug dealers of any size and [illegal drug] manufacturers probably are reticent about allowing the unknowing to take view of or assist in the operation.

*United States v. Robinson*, 978 F.2d 1554, 1557-58 (10th Cir. 1992).

*Commonwealth v. Vargas*, 108 A.3d 858, 868 (Pa. Super. 2014) (some citations omitted).

Viewing the evidence in the light most favorable to the Commonwealth, we conclude that the evidence was sufficient to prove Appellant constructively possessed the controlled substances found in his motel room. Appellant was the registered guest of Room 263. Police were conducting a drug investigation based on a tip that there was a large amount of marijuana and firearms in the room. In the room, police recovered, relevant to this appeal: (1) approximately two pounds of marijuana, packaged in various quantities; (2)

approximately 400 Alprazolam (Xanax) pills in unmarked bottles and scattered on the floor; (3) 31 grams of MDMA; (4) $4,500 of U.S. currency, separated and bundled with black rubber bands; and (5) packaging materials. *See* N.T. Trial Day 2, 1/18/23, at 189-90, 192, 195.

Most of the contraband was recovered from a blue duffel bag and black backpack that were in or near a blue Rubbermaid tote. *Id.* at 83. The duffel bag contained a large amount of marijuana in a vacuum-sealed bag, an open vacuum-sealed bag of marijuana, four bottles of Alprazolam (Xanax), and marijuana in branded packaging. *Id.* at 84-91. The black backpack contained a large bottle of Alprazolam (Xanax), a clear bag of black rubber bands (similar to what was used to bundle the $4,500) and four personal checks in Appellant's name. *Id.* at 100-103. A third, open vacuum-sealed bag of marijuana was in the vanity sink. *Id.* at 91. Additionally, Alprazolam (Xanax) pills were strewn about the floor of the room, and empty branded packaging, similar to what was found in the duffel bag, was on the floor and one of the beds. *Id.* at 92-94.

Appellant's checks were inside the black backpack, which also contained a large bottle of Alprazolam (Xanax) that was almost identical to the bottles found in the blue duffle bag. *Id.* at 149-150. The backpack and duffel bag were found together in or around the Rubbermaid tote. The backpack also contained rubber bands that were similar to those used on the $4,500 of U.S. currency. *Id.* at 150. Detective James Wood was admitted as an expert in narcotics trafficking and opined that the person who possessed the contraband

- 15 -

did so with the intent to manufacture or deliver the controlled substances. ***Id.*** at 188, 192, 195. Under the totality of the circumstances, the jury was free to conclude that Appellant constructively possessed the contraband in his motel room with the intent to manufacture or deliver. No relief is due.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/2/2026