J-A06007-21

2021 PA Super 128

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                      : PENNSYLVANIA
                                      :
            v.                        :
                                      :
                                      :
                                      :
AARON CHARLES MARTIN                  :
                                      :
            Appellant                 : No. 199 WDA 2020

Appeal from the Judgment of Sentence Entered January 9, 2020
In the Court of Common Pleas of Allegheny County Criminal Division at
          No(s):  CP-02-CR-0000409-2019

BEFORE:  BENDER, P.J.E., LAZARUS, J., and McCAFFERY, J.

OPINION BY BENDER, P.J.E.:                   **FILED:  June 23, 2021**

Appellant, Aaron Charles Martin, appeals from the judgment of sentence of 8-16 months' imprisonment and 2 years' consecutive probation, imposed after he was found guilty of carrying a firearm without a license[1] following a stipulated, non-jury trial.  Appellant contends that the trial court erred in denying his motion to suppress the seized firearm, arguing that the seizure was the poisonous fruit of observations made by police after an unconstitutional entry into the hotel room where he was found.  Alternatively, Appellant maintains that, even if observed from a lawful vantage point, the police did not possess reasonable suspicion to enter the room and search him

_____

[1] 18 Pa.C.S. § 6106(a)(1) ("[A]ny person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.").

for a firearm. After careful review, we reverse Appellant's conviction and vacate his judgment of sentence.

On December 30, 2018, Ross Township Police Officer Jason Moss and two of his colleagues were summoned to a Holiday Inn on McKnight Road in Allegheny County after a report of an odor of marijuana smoke. Trial Court Opinion ("TCO"), 6/29/20, at 3. Upon their arrival, the officers were directed to a room by hotel staff, where Officer Moss immediately detected the odor of marijuana smoke emanating from the room. *Id.* Officer Moss, who was in uniform, knocked on the door. *Id.* He did not announce his identity as a police officer, but he took no other efforts to conceal himself. *Id.*

A woman opened the door, allowing Officer Moss to peer inside, which is when he first observed Appellant. *Id.* at 4. Appellant immediately reached over a chair, triggering the officer's fear that Appellant was reaching for a weapon.[2] *Id.* Officer Moss drew his firearm and ordered Appellant to put his hands on his head; Appellant complied and sat down on a chair. *Id.* Officer Moss then observed the outline of a firearm in the pocket of Appellant's pants. *Id.* Appellant twice made motions with his hands toward the pocket, prompting Officer Moss to repeatedly order him to return his hands to the top of his head. *Id.* Officer Moss subsequently entered the room and conducted

---

[2] As discussed at length, *infra*, Appellant and the Commonwealth vigorously dispute whether Officer Moss had effectively 'entered' the room at the moment he made this critical observation.

a pat-down search of Appellant, yielding the at-issue firearm, and resulting in Appellant's arrest. *Id.*

The Commonwealth charged Appellant with carrying a firearm without a license, receiving stolen property, and possession of drug paraphernalia. Appellant filed a motion to suppress the seized contraband, which the trial court ultimately denied following a suppression hearing held on November 4, 2019. The case proceeded to a non-jury trial on January 9, 2020, where all the Commonwealth's evidence was admitted by stipulation, including the transcripts from the suppression hearing. N.T., 1/9/20, at 10-11. The trial court found Appellant guilty of carrying a firearm without a license, and not guilty of the remaining charges. *Id.* at 24-25. By agreement of the parties, the case immediately proceeded to sentencing, and the court imposed the above-stated sentence. *Id.* at 34. Appellant did not file a post-sentence motion, but he filed a timely notice of appeal and a timely, court-ordered Pa.R.A.P. 1925(b) statement. TCO at 2. The trial court issued its Rule 1925(a) opinion on June 29, 2020.

Appellant now presents the following questions for our review:

I. Did the trial court err in denying the suppression motion when Officer Moss entered the hotel room without a warrant or consent, and there were no exigent circumstances?

II. Did the trial court err in denying the suppression motion because Officer Moss conducted an illegal seizure, as he did not have reasonable suspicion that [Appellant] had committed a crime?

Appellant's Brief at 5 (unnecessary capitalization omitted).

Both Appellant's claims challenge the trial court's order denying suppression.

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where … the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. McAdoo*, 46 A.3d 781, 783–84 (Pa. Super. 2012) (cleaned up).

The first question before us concerns whether Officer Moss observed Appellant's ostensibly furtive movements from a lawful vantage point. In considering this question, we are cognizant of the following principles.

"The law is clear that citizens are protected by both federal and state constitutional provisions from unreasonable searches and seizures. U.S. Const. Amend. IV; Pa. Const. Art. I, § 8." *Commonwealth v. Dean*, 940 A.2d 514, 520 (Pa. Super. 2008). A "hotel room can clearly be the object of Fourth Amendment protection as much as a home or an office." *Id.* at 519 (cleaned up). Moreover, a "warrantless search or seizure is presumptively

unreasonable under the Fourth Amendment and Article I, § 8, subject to a few specifically established, well-delineated exceptions." ***Commonwealth v. McCree***, 924 A.2d 621, 627 (Pa. 2007). Exceptions to the warrant requirement include the "plain-view" and "exigent circumstances" exceptions. ***Commonwealth v. Evans***, 153 A.3d 323, 327–28 (Pa. Super. 2016).

The applicability of these exceptions is not unlimited. "It is, of course, an essential predicate to any valid warrantless seizure of incriminating evidence that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed." ***Horton v. California***, 496 U.S. 128, 136 (1990). Similarly, "[i]t is well established that police cannot rely upon exigent circumstances to justify a warrantless entry where the exigency derives from their own actions." ***Commonwealth v. Demshock***, 854 A.2d 553, 557 (Pa. Super. 2004).

Here, Appellant contends that "Officer Moss entered the hotel room when he positioned half of his body through the doorway, at which point he saw [Appellant], who was facing away from the officer and reaching over a chair." Appellant's Brief at 15. He further argues that:

> As Officer Moss's body was halfway through the door when he observed [Appellant], he had entered the "unambiguous physical dimensions" of the hotel room. [***U.S. v.***] ***Payton***, 445 U.S. [573,] 589-90 [(1980)] ("The Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant."). Officer Moss crossed "that threshold," [*i*]*d.*, when he placed half of his body through the door.

Appellant's Brief at 16-17.

The Commonwealth does not dispute the basic formulation of the legal question, but instead argues that the facts simply fail to support Appellant's claim. It contends that,

> contrary to [Appellant]'s interpretation of events, [Officer Moss] did not actually enter the hotel room until he walked in after having already observed [Appellant], from the doorway, turn his back to the door and reach over a chair in what the officer perceived as an attempt to retrieve a weapon and then subsequently reach toward the gun in his jeans' pocket on two separate occasions. Thus, because the officer's mere viewing of [Appellant]'s actions from the doorway was not an entry—unlawful or otherwise—and, in fact, did not even constitute a search at all, [Appellant]'s claim fails, and the lower court cannot be said to have erred in denying his motion to suppress.

Commonwealth's Brief at 9-10 (footnote omitted).

During the direct examination of Officer Moss, he initially testified that he was still outside of the threshold of the door when he first observed Appellant reaching over a chair. *See* N.T., 11/4/19, at 10 ("A female answered the door. And, obviously, I was in full uniform. She answers the door. [Appellant] is to my left. And as I look in -- *I didn't enter the door at this point* -- as *I look in from outside*, [Appellant] is reaching over a chair. So at that point I felt like he may have been attempting to retrieve a weapon.") (emphasis added). If this were the entirety of Officer Moss's testimony regarding his initial positioning when he first observed Appellant potentially reaching for a weapon, we would be compelled to agree with the Commonwealth. "When law enforcement officers who are not armed with a warrant knock on a door, they do no more than any private citizen might do."

*Kentucky v. King*, 563 U.S. 452, 469 (2011). If Officer Moss was completely outside of the hotel room when he observed Appellant's seemingly furtive behavior, he made those observations from a lawful vantage point for Fourth Amendment purposes.

However, Officer Moss's testimony evolved as the suppression hearing continued, as demonstrated by the following line of questioning by the prosecutor:

> Q. Okay. And where were you when the defendant reached over the chair?
>
> A. I was just, like, *in the threshold of the door*.
>
> Q. And when you say in the threshold of the door, could you approximate how far or where exactly you were standing in comparison to the door?
>
> A. I mean, just basically *peeking through the door* into the inside of the room on the left.

N.T., 11/4/19, at 13 (emphasis added).

While this differs from his initial testimony, it also does not establish a Fourth Amendment violation premised upon Officer Moss's crossing of the threshold. Viewed in a light most favorable to the Commonwealth, Officer Moss's statement that he was "in the threshold of the door" might be subject to multiple interpretations, but does not clearly convey that he had entered the room by *crossing the threshold* as described in *Payton*. Similarly, the phrase, "peeking through the door" might suggest that he had crossed the threshold by leaning into the room to observe Appellant, who was on the left

side of the room from Officer Moss's perspective, but that phrase is equally consistent with Officer Moss's 'peeking' from behind the threshold.[3]

However, during cross-examination, Officer Moss's testimony was unambiguous. While discussing the moment when he saw Appellant's reaching behind a chair, the following exchange occurred:

Q. So would you say that **half of your body was through the door** right at that point?

A. **Yes**. **I think that's fair**. Yes.

*Id.* at 20 (emphasis added).

The trial court did not discuss these discrepancies in its Rule 1925(a) opinion. Instead, the court stated that Officer Moss observed Appellant's movements "while [he] was still at the door," citing **only** Officer Moss's testimony **during direct examination**. TCO at 4. The trial court did not address Officer Moss's testimony during cross-examination, where he indicated that at least half of his body had crossed the threshold of the door at the moment that he observed Appellant reaching over the chair. In these circumstances, we conclude that the record does not support the trial court's factual conclusion that Officer Moss was merely **at** the doorway when he made

_____

[3] We note that the suppression court specifically asked Officer Moss whether the door, when opened, had obstructed his view of the left side of the room, as might be the case if the door swung inward with the hinge on Officer Moss's left. *Id.* Officer Moss testified that the door swung inward, with the hinge on his right, and that the handle was on his left. *Id.* Thus, the door did not obstruct his view of the left side of the room from his vantage point. Consequently, we cannot reasonably infer that it would have been impossible for Officer Moss to observe Appellant without crossing the threshold in some fashion.

this critical observation, because Officer Moss testified on cross-examination that half of his body had entered the room when he saw Appellant reach over the chair. N.T., 11/4/19, at 20.

The Commonwealth contends that the record supports the factual conclusion that Officer Moss was on the threshold of the door, not across it, but it relies solely on Officer Moss's direct-examination testimony to suggest that he had not entered the room. Regarding Officer Moss's subsequent testimony during cross-examination, the Commonwealth argues that Appellant's "classification of Officer Moss'[s] actions as an entry relies entirely on the fact that [Officer] Moss, during cross-examination, indicated that at some point while [Appellant] was reaching over the chair, his—the officer's— upper body probably leaned into the room from the doorway…." Commonwealth's Brief at 13-14. We disagree.

First, the record is clear that Officer Moss was describing his positioning at the moment he observed Appellant's reaching over the chair, not his positioning after that observation was made, and he made no probabilistic statements about whether he had crossed the threshold. *See* N.T., 11/4/19, at 20. Immediately prior to his admission to having at least partially entered the room, the officer was describing his body position to the court, indicating that his body was oriented at an angle to the doorway at the moment he made the initial observation. *Id.* It was at that point when Officer Moss answered defense counsel's question, acknowledging that half of his body was inside the room. *Id.* To the extent that the Commonwealth is now suggesting that

- 9 -

Officer Moss "was entirely outside of the doorway at least until he had viewed [Appellant] begin to reach over the chair," the record simply does not support that version of events, when considering Officer Moss's entire testimony on both direct and cross-examination. Commonwealth's Brief at 15. Indeed, that version is not even supported by Officer Moss's direct-examination testimony, as Officer Moss's description of his position changed during direct-examination. He first testified that he was fully outside of the doorway, N.T., 11/4/19, at 10, but then, soon thereafter, he said that he was "in the threshold of the door," *id.* at 13, when he observed Appellant's reaching over the chair. However, upon cross-examination, Officer Moss admitted that he was at least partially across the threshold when he made that observation. *Id.* at 20.

In the alternative, the Commonwealth appears to argue that, even if partially inside the room, Officer Moss's observation was made from a lawful vantage point, relying on ***Commonwealth v. McBride***, 570 A.2d 539 (Pa. Super. 1990). Yet, in that case, there was only a limited discussion of the specific facts pertaining to the alleged illegal entry, made in the context of a collateral attack on McBride's trial counsel's failure to file a suppression motion. The Commonwealth relies on a portion of the ***McBride*** Court's discussion, quoting from a legal treatise, which stated: "But the mere fact that the door of the house is opened in response to the officer's knock or ring does not mean that the officer is entitled to walk past the person so responding into the interior of the residence." ***McBride***, 570 A.2d at 542–43 (quoting 1 W. LaFave, *Search and Seizure*, § 2.3(b), at 387 (1987)). The Commonwealth

- 10 -

argues from this platform that "Officer Moss certainly did not walk past the woman who answered the door…." Commonwealth's Brief at 14. However, this is of no moment. As the **McBride** Court stated immediately thereafter: "These principles make it clear that if the police, in fact, **entered** [McBride]'s home without his consent and without a warrant, they violated rights guaranteed to [the] appellant by the Fourth Amendment of the United States Constitution." **McBride**, 570 A.2d at 543 (emphasis added). Our inquiry concerns whether Officer Moss had **entered** the room, not whether he passed someone along the way. The space protected by the Fourth Amendment ends at the threshold of the door, not at some undetermined point inside the dwelling where the person who answers the door is located. Obviously, if an officer walks past a person who answers the door, he necessarily crosses the threshold of the doorway to do so. That does not at all suggest, much less establish, that he had not entered the room merely because he had not yet walked past the person who answered the door.

The record here establishes that Officer Moss had 'entered' the room by crossing the threshold of the door with half of his body when he observed Appellant's furtive movements. This entry occurred without Officer Moss's having first obtained a warrant, and without the consent of either Appellant or the woman who had answered the door. As such, the officer did not make the observation that gave rise to a concern for his safety from a lawful vantage point. Accordingly, we conclude that the trial court erred when it denied Appellant's suppression motion premised upon the unsupported factual

- 11 -

conclusion that Officer Moss had not yet entered the room when he observed Appellant's reaching over the chair.

Given this conclusion, we need not address Appellant's second claim. Officer Moss had already violated Appellant's Fourth Amendment rights before making the observations that led to the seizure of the firearm. Whether or not those observations established reasonable suspicion that Appellant committed a crime or posed a danger to the officer, they were the direct result of the unconstitutional entry (and search from an unlawful vantage point) and, therefore, should have been suppressed. *See Wong Sun v. U.S.*, 371 U.S. 471, 485 (1963) (stating "verbal evidence which derives so immediately from an unlawful entry … is no less the 'fruit' of official illegality than the more common tangible fruits of the unwarranted intrusion"). Consequently, the seizure of the firearm should have also been suppressed as fruit of the poisonous tree stemming from that initial unconstitutional entry. As Appellant's conviction for carrying a firearm without a license was unsustainable without this physical evidence (as well as the observations made by Officer Moss following the illegal entry), we reverse Appellant's conviction for that offense.

Judgment of Sentence *reversed*. Appellant *discharged*.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>6/23/2021</u>