J-S35040-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL LEE WILLIAMSON | : | No. 500 MDA 2021 |

Appeal from the Order Entered April 1, 2021
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0000995-2020

BEFORE: OLSON, J., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:         **FILED: JANUARY 19, 2022**

The Commonwealth appeals from the order entered in the Court of Common Pleas of Dauphin County (trial court) granting the motion to suppress filed by Michael Lee Williamson (Williamson) following the January 24, 2020 filing of charges against him for possession with intent to deliver a controlled substance, tampering with evidence and possession of drug paraphernalia.[1] The Commonwealth challenges the trial court's suppression of the evidence recovered from the warrantless search of Williamson's vehicle on the basis that Williamson abandoned any expectation of privacy that he had in the car

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30), 18 Pa.C.S. § 4910(1), 35 P.S. §§ 780-113(a)(32).

and that the search was proper under the automobile and plain view exceptions to the warrant requirement. We affirm.

**I.**

**A.**

At Williamson's suppression hearing, Dauphin County Parole Officer Matthew Hernandez and Harrisburg City Police Officer Michael Rudy, who were both also assigned to the United States Marshal's Service Fugitive Task Force, testified that they were investigating Williamson because he had active warrants on assault and terroristic threats charges and for absconding while on parole for a previous drug offense. Each of them described the circumstances of the search.

Officer Hernandez testified that at approximately 1:00 p.m., the task force was provided with information that Williamson was in an apartment complex known as Hall Manor in the area of building numbers 43 and 44 and was told to look for a gold Chevrolet Impala. Officer Hernandez recounted that he parked south of the area and observed a female pull up in a white SUV and walk back and forth between building numbers 43 and 44. When the woman went back into her vehicle a few minutes later, a gold Chevrolet Impala pulled up and backed into a parking space. The woman exited her vehicle, walked to the driver's side window of the Chevrolet Impala and reached into the car. She returned to her vehicle and left the area. The driver of the Chevrolet Impala matched Williamson's description and he entered apartment

44C. Officer Hernandez testified that the interaction between Williamson and the woman lasted for approximately five seconds.

Officer Rudy explained that he has investigated crimes in the area of Hall Manor "many times [and] consider[ed] it one of our higher drug and crime areas in the city of Harrisburg." (N.T. Suppression, 2/24/21, at 14). He testified that based on his training and experience, the interaction between Williamson and the unidentified woman was "consistent with what we often see for drug transactions in that area [where] somebody pulls in the area and they . . . walk up to somebody, they have a very quick interaction with them, and they leave right away." (*Id.* at 15).

The officers knocked on the door of apartment 44C for about 20 minutes without answer. They contacted the primary resident of the unit, Jazariel Scott, who was not home at the time, and she volunteered to call Williamson to tell him to come out. Williamson opened a second floor window of the apartment and voluntarily came down the stairs. He was taken into custody and Ms. Scott gave the officers consent to search her residence. They found a key to the Chevrolet Impala on a dresser in the room where Williamson had opened the window. An unidentified woman was in the apartment at the time. She described herself as a child's babysitter, although no child was present.

Officer Rudy gave Williamson **Miranda**[2] warnings and asked him if there was anything illegal inside the residence. Williamson admitted to flushing marijuana down the toilet. Officer Rudy testified: "I then asked him about the vehicle, and he denied ever being in it. I told him that we saw the female approaching it. He denied that ever happened." (**Id.** at 19). Williamson asked for an attorney and Officer Rudy stopped questioning him.

Regarding the Chevrolet Impala, Officer Rudy explained that he observed "cigar — like you take a cigar and empty the guts out of it. Those were scattered across the car." (**Id.**). Officer Rudy testified that he could see the "cigar guts" through the car window and that they were "inside the vehicle, scattered on the floor." (**Id.** at 21). Given that Williamson had told Officer Rudy that he flushed marijuana down the toilet, the officer opined that "it's common practice to take cigars, slice them open, take the guts, or the insides of them out . . . and put marijuana inside to smoke." (**Id.**).

A dog from the canine unit alerted on the front driver's side door during a police sniff of the vehicle. The officers used the key found in the apartment to unlock the Chevrolet Impala and recovered a knotted sandwich bag containing 18 individually packaged bags of crack cocaine in the driver's side door, an open box of sandwich bags and a razor blade with a white powdery residue on it.

---

[2] **Miranda v. Arizona**, 384 U.S. 436 (1966).

On cross-examination, Officer Rudy acknowledged that the Chevrolet Impala is registered to Williamson, that Williamson did not provide the officers with access to the car key, that approximately ten officers were on the scene at the time of the search, and that they never sought a search warrant for the vehicle. The trial court deferred ruling on the suppression motion pending the parties' submission of briefs.

**B.**

Relying on our Supreme Court's then-recent decision in *Commonwealth v. Alexander*, 243 A.3d 177 (Pa. 2020), the trial court granted Williamson's suppression motion concluding that the warrantless search of the vehicle violated the tenants of Article I, Section 8 of the Pennsylvania Constitution and that Williamson had a reasonable expectation of privacy in the Chevrolet Impala. (*See* Trial Court Opinion, 4/01/21, at 7, 14).

In *Alexander*, two Philadelphia police officers stopped a vehicle driven by Alexander at 2:30 a.m. The officers smelled marijuana and Alexander stated that he and his female passenger, who owned the vehicle, had just smoked a blunt. Officer Godfrey arrested Alexander and placed him in the patrol vehicle, while the passenger was removed from the car. The officers searched the interior for more marijuana but only found a metal box behind the driver's seat. The box opened with a key Alexander had on his keychain and contained bundles of heroin. Alexander was charged with, *inter alia*,

possession with intent to deliver and filed a suppression motion challenging the search, which was denied. At a bench trial, he was convicted of possession with intent to deliver. *See id.* at 181.

Our Supreme Court held "that Article I, Section 8 affords greater protection to our citizens than the Fourth Amendment, and reaffirms our prior decisions: the Pennsylvania Constitution requires both a showing of probable cause and exigent circumstances[3] to justify a warrantless search of an automobile." *Id*. "Obtaining a warrant is the default rule. If an officer proceeds to conduct a warrantless search, a reviewing court will be required to determine whether exigent circumstances existed to justify the officer's judgment that obtaining a warrant was **not** reasonably practicable." *Id.* at 208 (emphasis in original). The Court remanded the case to the trial court, noting that the testimony was not directed at the exigencies of the situation.[4]

---

[3] Exigent circumstances exist when the totality of the circumstances of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment. *See Commonwealth v. Trahey*, 228 A.3d 520, 530 (Pa. 2020). "Although an exigency may present itself in a variety of contexts, its defining trait is a compelling need for official action and no time to secure a warrant." *Id.* (citation omitted). Such a need may arise to prevent the imminent destruction of evidence. *See id.*

[4] *Alexander* was issued in December 2020, several months after the search of Williamson's vehicle. The *Alexander* Court overruled *Commonwealth v. Gary*, 91 A.3d 102 (Pa. 2014) (OAJC), which had adopted the federal automobile exception to the warrant requirement, authorizing police officers to search a motor vehicle when there is probable cause to do so and does not require any exigency beyond the inherent mobility of a motor vehicle.

Disagreeing with the trial court that the search was not valid, the Commonwealth timely appealed and certified that the suppression order terminated or substantially handicapped its prosecution of this case. **See** Pa.R.A.P. 311(d). The Commonwealth and the trial court complied with Rule 1925. **See** Pa.R.A.P. 1925(a)-(b).[5]

## II.

On appeal, the Commonwealth contends that the trial court erred in granting Williamson's motion to suppress because the search of the vehicle

---

[5]

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

**Commonwealth v. Martin**, 253 A.3d 1225, 1227–28 (Pa. Super. 2021) (citation omitted). Our scope of review of a suppression ruling is limited to the evidentiary record that was created at the suppression hearing. **See Commonwealth v. Bumbarger**, 231 A.3d 10, 15 (Pa. Super. 2020), *appeal denied*, 239 A.3d 20 (Pa. 2020).

was legal. It primarily argues that Williamson abandoned any privacy interest he may have had in the vehicle by repeatedly denying several times that he had been inside of it, even after the officers told him that they had observed him in it. The Commonwealth also challenges the trial court's application of *Alexander* to this case by claiming that the then-controlling *Gary* holding applies. Alternatively, the Commonwealth maintains that *Alexander*'s twin requirements of probable cause and exigency were met in this case. Finally, it claims the search was justified under the plain view doctrine because the incriminating nature of the cigar guts was readily apparent to the investigating officers.[6]

**A.**

We first address the Commonwealth's contention that Williamson's Fourth Amendment and Article 1, Section 8 rights were not violated because he, in his statements to police, abandoned any privacy interest he may have had in the Chevrolet Impala. The Commonwealth likens the facts of this case

---

[6] "The law is clear that citizens are protected by both federal and state constitutional provisions from unreasonable searches and seizures. U.S. Const. Amend. IV; Pa. Const. Art. I, § 8." *Martin*, *supra* at 1228 (case citation omitted). A warrantless search or seizure is presumptively unreasonable under the Fourth Amendment and Article I, § 8, subject to a few established, well-delineated exceptions. *See id.* (emphasis added). Such exceptions include "the consent exception, the plain view exception, the inventory search exception, the exigent circumstances exception, the automobile exception . . . the stop and frisk exception, and the search incident to arrest exception." *Commonwealth v. Simonson*, 148 A.3d 792, 797 (Pa. Super. 2016) (citation omitted).

to our Supreme Court's decision in **Commonwealth v. Dowds**, 761 A.2d 1125 (Pa. 2000), and claims that Williamson's denials concerning the Chevrolet Impala were sufficient to establish abandonment.

> The Fourth Amendment to the United States Constitution protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. To prevail on a suppression motion implicating the Fourth Amendment, **"a defendant must demonstrate a legitimate expectation of privacy in the area searched or effects seized, and such expectation cannot be established where a defendant has meaningfully abdicated his control, ownership or possessory interest."** **Dowds**, [**supra** at 1131]. The theory of abandonment is predicated upon the clear intent of an individual to relinquish control of the property he possesses and . . . is primarily a question of intent, which may be inferred from words spoken, acts done, and other objective facts. Further, all relevant circumstances existing at the time of the alleged abandonment should be considered and the issue is . . . whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search.

**Commonwealth v. Dunkins**, 263 A.3d 247, 254 (Pa. 2021) (some quotation marks and citations omitted; emphasis added).

This Court has found that an expectation of privacy exists when an individual exhibits an actual or subjective expectation of privacy, and that expectation is one that society is prepared to recognize as reasonable. **See Commonwealth v. Kane**, 210 A.3d 324, 330 (Pa. Super. 2019), *appeal denied*, 218 A.3d 856 (Pa. 2019), *cert. denied sub nom.* **Kane v. Pennsylvania**, 140 S.Ct. 2823 (2020). "In determining whether a person's expectation of privacy is legitimate or reasonable, we must consider the

totality of the circumstances and the determination ultimately rests upon a balancing of the societal interests involved." *Id.* (citation omitted).

In *Dowds*, the defendant was approached by plain clothes law enforcement officers in an airport who identified themselves and explained their duties before asking her to produce a flight ticket and identification. When the officers asked Dowds if she had checked a suitcase for her trip, Dowds stated that she had not, and upon being told that there was a suitcase at the baggage claim area with tags listing her last name, Dowds denied ownership. The officers asked Dowds if they could look through the suitcase and she responded, "It's not my bag. You can look through it if you want." *Id.* at 1127. During a canine sniff of the suitcase, a dog alerted to it, indicating the presence of narcotics. The officers then brought the suitcase to the gate area where Dowds was sitting, at which point she again denied ownership and told the officers that they could look inside it. Dowds was advised that she would be detained until a search warrant could be secured. Upon receipt of the warrant, the police forcibly opened the suitcase, finding 32.76 pounds of marijuana, and Dowds was charged with possession with intent to deliver a controlled substance. Prior to trial, Dowds moved to suppress, asserting that the police lacked reasonable suspicion and/or probable cause when they initially approached her, and that the subsequent search of the suitcase was tainted by prior illegality. Our Supreme Court disagreed and held in relevant part that Dowds' constitutional rights were not violated and that her "repeated

denial of ownership sufficiently manifested her intention to relinquish any privacy expectation held in the suitcase." *Id.* at 1132.

Here, the trial court found the Commonwealth's reliance on ***Dowds*** unpersuasive and contrasted the facts of that case with Williamson's alleged abandonment of the Chevrolet Impala:

> Legal ownership of a vehicle is clearly a privacy interest that society recognizes as reasonable. Being an owner of a vehicle, where that registration is filed of record with the Commonwealth of Pennsylvania, is distinguishable from being the owner of a piece of luggage as was the case in ***Dowds***. Vehicle ownership through the legal process of registration carries legal obligations and responsibilities. Such ownership also provides a private property interest that cannot be severed easily.

(Trial Ct. Op., at 6).

The trial court also disagreed with the Commonwealth's characterization of Williamson's statements to police as a disavowment of the Chevrolet Impala and interpreted his statements, in context, as a "colloquial way of denying an accusation being made against him" rather than as a literal statement evidencing an intent to abandon his privacy interest in the vehicle. (***Id.*** at 7). It also noted that unlike in ***Dowds***, Williamson never expressly denied owning the vehicle.

Our review of the record fully supports the trial court's assessment and its conclusion that Williamson did not abandon the reasonable expectation of privacy he had in the vehicle registered to him. Accordingly, the Commonwealth's first argument merits no relief.

- 11 -

**B.**

**1.**

We next address the Commonwealth's contentions concerning the application of *Alexander* to the facts of this case. The Commonwealth first maintains that the *Gary* holding controls since it was the then-prevailing law because *Alexander* had not been issued at the time of the search. However, we have recently held that *Alexander*, in overruling *Gary*, announced a new criminal rule that applies to all criminal cases still pending on direct review, provided that the issue has been preserved at all stages of the adjudication up to and including the direct appeal. *See Commonwealth v. Heidelberg*, 2021 WL 5458398, at *7-8 (Pa. Super. Ct. filed Nov. 23, 2021) (citing *Commonwealth v. Newman*, 99 A.3d 86, 90 (Pa. Super. 2014) (*en banc*) ("To be entitled to retroactive application of a new constitutional rule, a defendant must have raised and preserved the issue in the court below.").

In this case, Williamson did raise and preserve the *Gary* automobile exception issue in the trial court by raising it in his motion to suppress evidence. Therefore, the Commonwealth's argument that *Gary* rather than *Alexander* controls in this case where no judgment of sentence has been entered is specious.

**2.**

Regarding the substantive requirements of *Alexander*, we agree with the trial court that the Commonwealth failed to establish the presence of

exigent circumstances. The Commonwealth maintains that "there was a concern about evidence being destroyed [because] the defendant admitted to police that he previously destroyed evidence by flushing marijuana down the toilet." (Commonwealth's Brief, at 19). The Commonwealth also points to the behavior of the unidentified woman in the apartment at the time of the incident and posits: "There was no way for the police to know if the defendant and the woman were working together [and] if they left the vehicle unsearched, there was nothing to say that the defendant had not communicated to the woman or the women on her own would have taken the key and destroyed any evidence prior to the police having the ability to get a search warrant." (*Id.* at 20).

These claims are specious. As the trial court explained, Williamson's admission concerning flushing marijuana down the toilet is of no consequence, as he was detained in the custody of several police officers at the time of the search of the Chevrolet Impala and could not have destroyed any evidence in the vehicle at that point. With regard to the unidentified self-described babysitter in the apartment, the record is sparse as to any role she may have played in the incident. In any event, to the extent the Commonwealth suggests she was capable of tampering with evidence, such suggestion is to be kind, highly speculative at best given that the Chevrolet Impala was locked, the police were in possession of the key, and the up to a dozen officers on the

scene could have maintained observation of the vehicle until they secured a warrant.

**C.**

Finally, we address the Commonwealth's claim that the plain view exception relieved it of any obligation to obtain a search warrant for the Chevrolet Impala, given the incriminating nature of the cigar guts scattered throughout the car, signaling possible marijuana use.

"The plain view doctrine provides that evidence in plain view of the police can be seized without a warrant." ***Commonwealth v. Luczki***, 212 A.3d 530, 546 (Pa. Super. 2019) (citation omitted). "This doctrine permits a valid warrantless seizure of an item where: (1) the police have not violated the Fourth Amendment in arriving at the location from which the item could be viewed; (2) the item is in plain view; (3) the incriminating character of the item is immediately apparent; and (4) the police have a lawful right of access to the item itself." ***Id.*** (citation omitted).

To assess whether the incriminating nature of an object was immediately apparent to the police officer, reviewing courts must consider the totality of the circumstances. ***See id.*** An officer can never be 100 percent certain that an item in plain view is incriminating, but his belief must be supported by probable cause. ***See Commonwealth v. Turner***, 982 A.2d 90, 92 (Pa. Super. 2009), *appeal denied*, 992 A.2d 889 (Pa. 2010).

Here, while the first two prongs of the test were satisfied because Officer Rudy was lawfully outside of Williamson's vehicle when he first observed the "cigar guts" scattered about the car in plain view through the windows, it failed to satisfy the other two prongs of the test – the incriminating character of the item in plain view and that it had a lawful right to access inside the vehicle. As to the third prong, the record falls woefully short of establishing the incriminating nature of the cigar materials. A review of the suppression hearing transcript confirms the trial court's assessment that Officer Rudy never testified to the incriminating nature of the "cigar guts" themselves and that he, at best, indicated that the cigar remnants were indicative of possible marijuana paraphernalia.[7] As to the fourth prong, the Commonwealth presents a cursory argument that Ms. Scott's consent to search her home (which uncovered the car key) somehow also enveloped a lawful right of access to Williamson's locked vehicle. (**See** Commonwealth's Brief, at 21). This argument is understandably unsupported by any legal authority because if that was the law, then any key found where consent to search a premises was given would allow a search of premises owned by another.

---

[7] Although there is no evidence of the actual presence of marijuana in the Chevrolet Impala, we note that the assessment of the apparent incriminating nature of an object has been impacted by the enactment of the Medical Marijuana Act pursuant to which a substantial number of Pennsylvania citizens may now possess and consume marijuana legally. **See** 35 P.S. §§ 10231.101—10231.2110. (effective May 2016).

- 15 -

Accordingly, the Commonwealth's claim that the warrantless search of the Chevrolet Impala was justified by the plain view exception fails.

Order affirmed. Jurisdiction relinquished.

Judge Kunselman joins the memorandum.

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/19/2022