J-A08042-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| KHALIL PATTON-VINCENT | : | |
| | : | |
| Appellant | : | No. 933 EDA 2023 |

Appeal from the Judgment of Sentence Entered November 30, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008561-2021

BEFORE: BOWES, J., OLSON, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.: **FILED JULY 16, 2024**

Khalil Patton-Vincent appeals from the judgment of sentence entered following his convictions for possession of firearm prohibited, firearms not to be carried without a license, and carrying firearms on the public streets in Philadelphia.[1] He challenges the denial of his suppression motion, the sufficiency of the evidence, and the discretionary aspects of sentencing. We affirm.

Following a traffic stop, a police officer observed a firearm in Patton-Vincent's vehicle. The Commonwealth charged him with the above offenses. Patton-Vincent moved to suppress, arguing that the officers lacked both reasonable suspicion to stop his vehicle and probable cause to conduct a warrantless search of his vehicle. **See** Omnibus Pretrial Motion, filed 6/10/22,

_____

[1] 18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1), and 6108, respectively.

at ¶¶ 5-6. At a suppression hearing, defense counsel offered additional grounds for suppression, including that the officers "unlawfully detained [Patton-Vincent] past the purpose of the window tint" and "the purpose of the traffic stop was never even attempted to be accomplished." N.T., Suppression Hearing, 6/13/22, at 7. He further argued that even if the officer observed the firearm, "it was from an unlawful vantage point, being that it was during the unlawful extension of this encounter[.]" *Id.*

The Commonwealth then presented the testimony of Officer Edward Lane, who said that on July 12, 2021, he received a radio call for a person with a gun. *Id.* at 9, 11. Officer Lane's partner, Officer Christopher Rycek, was with him. *Id.* at 31, 32. The specific information they received was, "1100 Rising Sun, on Rising Sun, four black males, three of them dark complexion, one light complexion, armed with guns, inside of a gray Dodge Durango with tinted windows." *Id.* at 11.

Officer Lane testified that when they arrived at the location, he observed "a dark gray Dodge Durango with tinted windows on the 1000 block of Rising Sun, double-parked in the running lanes." *Id.* at 11-12. He described the tint as "extremely dark, including the windshield, where I couldn't see inside of the vehicle." *Id.* at 12. Officer Lane made a U-turn back towards the vehicle. *Id.* By that time, the Durango had begun moving, and Officer Lane conducted a traffic stop. *Id.* He approached the driver's side of the vehicle and encountered Patton-Vincent who was in the driver's seat and the sole occupant of the vehicle. *Id.* at 12, 16, 31. Officer Lane asked Patton-Vincent for his

license and registration. *Id.* at 16. He asked if Patton-Vincent had any firearms in the vehicle or a license to carry a firearm. *Id.* at 12. Patton-Vincent answered, "No," to both questions. *Id.* Officer Lane asked for consent to search the vehicle, which Patton-Vincent denied. *Id.* at 12-13.

Officer Lane returned to his vehicle to look up Patton-Vincent's information and call for a K-9 unit to conduct an exterior sweep of the vehicle. *Id.* at 13. While running Patton-Vincent's information, Officer Rycek stayed with Patton-Vincent.

Officer Rycek testified that as he was standing by the driver's side door speaking with Patton-Vincent, he "looked down at the floor board" and saw "a firearm behind his feet underneath the driver's seat." *Id.* at 32. Officer Rycek said he "saw the gun, maybe having a couple of inches on [Officer Lane]", who had later told Officer Rycek that he was "too short" and "couldn't see the gun" initially. *Id.* at 34. Once Officer Rycek saw the firearm, he immediately opened the door to detain Patton-Vincent and yelled, "Gun in plain view," to Officer Lane. *Id.* at 37. Officer Lane exited his vehicle and went to the passenger side door of Patton-Vincent's vehicle. He opened the door "and leaned across, and . . . could see [the firearm] at that point." *Id.* at 14. Officer Lane testified that he recovered the firearm from "underneath the driver's side. . . [o]n the driver's side floor board, right in front of the driver's seat." *Id.* Officer Rycek testified that the firearm was "within arm's reach right under the driver's seat." *Id.* at 39. The firearm was loaded with 15 live rounds. *Id.* at 15.

Officer Lane did not issue traffic citations for Patton-Vincent. *Id.* at 21. The time between the initial stop and the officers' taking Patton-Vincent into custody was approximately nine minutes and 20 seconds, per the body cam footage admitted into evidence. *Id.* at 24-25.

The court denied the motion and, on the same day, Patton-Vincent proceeded by way of a stipulated waiver trial. *See id.* at 51, 53. The court incorporated all relevant non-hearsay testimony from the suppression hearing. *Id.* at 57. The Commonwealth also admitted a firearms report, Patton-Vincent's Secure Court Summary indicating his ineligibility to possess a firearm, and a DNA report indicating that he was the major source of DNA on the firearm. *Id.* at 57-58, 59-60; Exhibits C-4, C-5, C-6. The court found Patton-Vincent guilty of the above-mentioned offenses.

At sentencing, the court heard testimony from Patton-Vincent's father, uncle, cousin, and grandmother. *See* N.T., Sentencing, 11/30/22, at 12, 14, 16, 18. Patton-Vincent told the court that he took full responsibility for possessing a firearm, asked the court for leniency, and stated that as a juvenile he was diagnosed with PTSD. *Id.* at 21, 22. Counsel notified the court of information in the Pre-Sentence Investigation ("PSI") report including Patton-Vincent's history with drugs and his mental health issues. *Id.* at 11. For its part, the Commonwealth noted that the instant case was Patton-Vincent's third firearm conviction. *Id.* at 20.

The court sentenced Patton-Vincent to two and one half to five years' incarceration followed by three years' probation. *See* Order, filed 11/30/22.

It also ordered a dual diagnosis program and drug and/or alcohol treatment.

*See* N.T., Sentencing, at 22. In explaining its sentence, the court stated:

> This case is difficult because, obviously, you've been arrested for, you know, three times with a gun. And, obviously, we all know that you're, you know, 6105 ineligible, so you're not allowed to carry a firearm in –ever, basically, for the rest of your life, but we still have these – we still have these arrests for the gun charges.
>
> All right. Based on what I see, two and a half to five at SCI Chester. I'd like a dual-diagnosis, and I would like him to be able to get therapy and/or drug or alcohol treatment if they determine that he needs that . . . .
>
> I am recommending Chester because I do think that he needs a dual-diagnosis program; there's PTSD and things of that nature.

*Id.* at 22, 23. This timely appeal followed.

Patton-Vincent raises the following issues:

1. Whether the suppression court erred by denying the motion to suppress despite evidence of a warrantless search of [Patton-Vincent's] vehicle without exigent circumstances?

2. Whether the evidence presented at trial was sufficient to establish each and every element of the crimes for which [Patton-Vincent] was convicted?

3. Whether the sentencing court abused its discretion by imposing a manifestly excessive sentence that was not based upon the gravity of the violation, the extent of [Patton-Vincent's] record, his prospect of rehabilitation, nor an assessment of the mitigating and aggravating factors as noted in 42 Pa.C.S. Section 9721 of the Sentencing Code?

Patton-Vincent's Br. at 8.

Patton-Vincent's first issue challenges the court's denial of his motion to suppress. When reviewing the denial of a motion to suppress, we determine whether the trial court's "factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." **Commonwealth v. Jones**, 266 A.3d 1090, 1094 (Pa.Super. 2021) (citation omitted). "[W]e may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." **Id.** (citation omitted). "Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial." **Commonwealth v. McMahon**, 280 A.3d 1069, 1071 (Pa.Super. 2022) (citation omitted).

Patton-Vincent claims that the police unlawfully detained him and illegally conducted a warrantless search of his vehicle. He maintains that the officers did not have reasonable suspicion to perform the stop and lacked probable cause to detain him and subsequently search his vehicle. He argues that the Commonwealth failed to "establish any circumstances that would provide a legitimate factual basis for the detention of [Patton-Vincent] and seizure of physical evidence." Patton-Vincent's Br. at 14. He further maintains that the K-9 search of his vehicle unreasonably prolonged the stop and resulted in an unlawful detention. **See id.** at 15 (citing **Rodriguez v. United States**, 575 U.S. 348 (2015) (holding that "[a] seizure justified only by a police-observed traffic violation, . . . become[s] unlawful if it is prolonged

beyond the time reasonably required to complete th[e] mission of issuing a ticket for the violation") (cleaned up)).

The Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution, protects citizens from warrantless searches and seizures unless an exception applies. *See Commonwealth v. Singleton*, 169 A.3d 79, 82 (Pa.Super. 2017); *Commonwealth v. Martin*, 253 A.3d 1225, 1228 (Pa.Super. 2021). One exception is the plain view doctrine. *See Martin*, 253 A.3d at 1228. "The plain view doctrine provides that evidence in plain view of the police can be seized without a warrant[.]" *Commonwealth v. Luczki*, 212 A.3d 530, 546 (Pa.Super. 2019) (citation omitted). This exception applies when: "(1) an officer views the object from a lawful vantage point; (2) it is immediately apparent to him that the object is incriminating; and (3) the officer has a lawful right of access to the object." *Commonwealth v. Smith*, 285 A.3d 328, 332 (Pa.Super. 2022) The incriminating character of an item is determined by the totality of the circumstances. *See id.* at 333. "[W]here police officers observe incriminating-looking contraband in plain view in a vehicle from a lawful vantage-point, the lack of advance notice and opportunity to obtain a warrant provides the officers with a lawful right of access to seize the object in question." *Commonwealth v. Brown*, 23 A.3d 544, 557 (Pa.Super. 2011) (*en banc*).

Here, after receiving a radio call for four men with firearms in a gray Dodge Durango, Officer Lane observed a vehicle matching that description, in the same area as the radio call. Officer Lane also observed that the vehicle

had extremely dark tint, in violation of the Motor Vehicle Code (MVC). **See** 75 Pa.C.S.A. § 4524(e)(1) ("No person shall drive any motor vehicle with any sun screening device or other material which does not permit a person to see or view the inside of the vehicle through the windshield, side wing or side window of the vehicle"). The heavy tint on Patton-Vincent's vehicle gave officers probable cause to conduct a traffic stop of his vehicle. **See Commonwealth v. Harris**, 176 A.3d 1009, 1019 (Pa.Super. 2017) (stating officers have probable cause to conduct a traffic stop when a traffic code violation is observed).[2]

To the extent that Patton-Vincent argues that officers unreasonably prolonged the traffic stop, the record belies this claim. Part of the nine minutes of the traffic stop included Officer Lane returning to his vehicle to call for a K-9 unit to conduct an exterior sweep of the vehicle *and* to look up Patton-Vincent's information. **See** N.T., Suppression Hearing, at 13. Here, the traffic stop was still ongoing when Officer Lane called for the K-9 unit. **Cf. Rodriguez**, 575 U.S. at 351-352 (holding that "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures" and therefore detention of defendant and conduction of K-9 sweep after completion of traffic stop and issuance of traffic ticket was without reasonable suspicion).

_____

[2] Officer Lane also testified that the Durango was double-parked. **See** Phila. Code § 12-913(1)(a)(.1).

Furthermore, the warrantless search of Patton-Vincent's vehicle was supported by the plain view doctrine. First, Officer Rycek viewed the firearm from a lawful vantage point, standing on the driver's side of the vehicle, while the traffic stop was still ongoing. Second, the incriminating nature of the firearm was immediately apparent to Officer Rycek. At the point of seeing the firearm, Officer Rycek knew that Patton-Vincent had admitted that he did not have a license to carry a firearm. **See** N.T., Suppression Hearing, at 12, 32. Finally, Officer Rycek had a lawful right to access to the inside of Patton-Vincent's vehicle. Officer Rycek had observed the firearm partly under the driver's seat and had no advance notice or opportunity to obtain a warrant for the firearm. **See Commonwealth v. Davis**, 287 A.3d 467, 474 (Pa.Super. 2022) (finding that a firearm under the driver's seat fell within public view doctrine, where the officer saw the firearm while standing outside of defendant's vehicle, defendant was parked illegally and did not have a license to carry the firearm). The trial court did not err in denying the motion to suppress.

Next, Patton-Vincent claims that the Commonwealth failed to present sufficient evidence that he constructively possessed the firearm recovered from the vehicle. He argues that the Commonwealth was required to prove that he knew the firearm was in the vehicle and that he intended to control it. He further maintains that Officer Rycek could not see under the driver's seat "from outside the vehicle, with the car door closed." Patton-Vincent's Br. at 19.

Patton-Vincent's sufficiency claim is waived. When an appellant challenges the sufficiency of evidence, the appellant's Rule 1925(b) statement must specify the elements of the crime that the appellant believes were not sufficiently proven. *See Commonwealth v. Tyack*, 128 A.3d 254, 260 (Pa.Super. 2015); Pa.R.A.P. 1925(b). Where the appellant fails to do so, the claim is waived. *See Tyack*, 128 A.3d at 260.

Here, Patton-Vincent's Rule 1925(b) reads verbatim: "The evidence presented at trial was insufficient to sustain a conviction as a matter of law. The evidence presented at trial did not establish appellant's guilt beyond a reasonable doubt. The trial court erred by failing to grant a judgment of acquittal." Statement of Matters Complained of on Appeal Pursuant to R.A.P. 1925(b), filed 4/10/23. Patton-Vincent failed "to specify the element or elements upon which the evidence was insufficient." *Tyack*, 128 A.3d at 260 (citation omitted). As such, the claim is waived.[3]

_____

[3] Even if Patton-Vincent had not waived his sufficiency challenge, we would reject his challenge to the finding of constructive possession for the reasons that the trial court gave in its Rule 1925(a) opinion. *See* Trial Court Opinion, filed Apr. 18, 2023, at 5. His "physical impossibility" argument fails because the trial court was entitled to credit Officer Rycek's testimony that he could see the gun from outside the car, and reconcile his statement that the gun was "behind [Patton-Vincent's] feet underneath the driver's seat," with Officer Lane's testimony that it was "on the driver's side floor board, right in front of the driver's seat." *See Commonwealth v. Simmons*, 662 A.2d 621, 630 (Pa. 1995). The two statements are readily reconcilable. They are not so incompatible as to render the evidence so unreliable or contradictory as to not constitute proof beyond a reasonable doubt. *See Commonwealth v. Farquharson*, 354 A.2d 545, 550 (Pa. 1976).

Patton-Vincent's final claim challenges the discretionary aspects of his sentence, of which there is no automatic right of appeal. ***See Commonwealth v. Conte***, 198 A.3d 1169, 1173 (Pa.Super. 2018). Before we may address the merits of a challenge to the discretionary aspects of a sentence, we must first determine whether: "(1) the appeal is timely; (2) the appellant has preserved his issue; (3) his brief includes a concise statement of the reasons relied upon for allowance of an appeal with respect to the discretionary aspects of his sentence; and (4) the concise statement raises a substantial question whether the sentence is inappropriate under the Sentencing Code." ***Commonwealth v. Green***, 204 A.3d 469, 488 (Pa.Super. 2019).

Patton-Vincent fails the second prong of our four-part test. He did not challenge the alleged excessiveness of his sentence at the sentencing hearing or in a post-sentence motion. As such, he did not preserve this claim for appeal. ***See Commonwealth v. Cartrette***, 83 A.3d 1030, 1042 (Pa. Super. 2013) (*en banc*) (stating claims challenging discretionary aspects of sentence must be raised in post-sentence motion or at sentencing, and the failure to do so results in waiver). We affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/16/2024